[No. 27590.    Department Two.    August 5, 1939.]

JOSEPH D. ROBERTS, *Respondent,* v. EARL MILLIKIN, *as Auditor of King County, et al., Appellants.*[1]

[1]Reported in 93 P. (2d) 393.

*B. Gray Warner, Wm. Hickman Moore, John Caughlan, Oliver E. Henderson, Geo. F. Vanderveer,* and *John Geisness,* for appellants.

*James M. Ballard* and *Philip Tindall,* for respondent.

*The Attorney General* and *John E. Belcher, Assistant, amici curiae.*

GERAGHTY, J.—Clara Wheeler, Bernice Steele, Irene Olson, and G. L. Baxter filed charges with Earl Millikin, auditor of King county, demanding the recall

and discharge of Joseph D. Roberts from the office of senator of the state of Washington from the "35th legislative district." The charges, filed under Laws of 1913, chapter 146, p. 454 (Rem. Rev. Stat., § 5350 [P. C. § 2305] *et seq.*), specified two acts of alleged malfeasance and misfeasance committed by Senator Roberts in respect of the duties and obligations of his office during the 1939 session of the state legislature.

The first charge was that, being desirous of the passage of bill 46, then pending in the senate, but opposed to the passage of pending Senate bill 47, he unlawfully entered into a corrupt agreement with four of his colleagues, who were opposed to the passage of bill 46, but favored the passage of bill 47, by the terms of which he would cast his vote for bill 47, which he opposed, and his four colleagues, parties to the agreement, would vote for bill 46, to which they were opposed; that

". . . pursuant to said improper, unlawful and corrupt understanding and agreement the said Joseph D. Roberts did, on the 1st day of February, 1939, vote in support of and for the passage of said Senate bill 47; that said vote and said support of Joseph D. Roberts for said bill was solely in furtherance of said unlawful, improper and corrupt understanding and agreement, and was not based on a fair and impartial determination of the merits of said bill and proposition in accordance with his best and uninfluenced judgment."

The second charge recited the pendency of bills 48 and 70 before the senate; that the governor of the state desired the passage of bill 48; that Senator Roberts was opposed to the passage of bill 48, but favored the passage of bill 70, and was further desirous of securing assurance that, upon its passage, it would be signed by the governor. It is charged that Senator Roberts and the governor, for the sole purpose of carrying out their respective wishes in the premises and preventing

the fair and impartial consideration of the two bills in accordance with the best and uninfluenced judgment of the several parties, did

" . . . wilfully, knowingly, intentionally and unlawfully conspire together and mutually enter into an improper, unlawful and corrupt understanding and agreement whereby said Joseph D. Roberts agreed to cast his vote in favor of the passage of Senate bill No. 48, and whereby said Clarence D. Martin agreed to use his influence to secure the passage of Senate bill No. 70 . . .";

and that Senator Roberts, "solely in furtherance of said unlawful, corrupt and improper understanding and agreement," voted for the passage of Senate bill 48, and that his vote was not based

" . . . on a fair and impartial determination of the merits of said bill in accordance with his best and uninfluenced judgment, but solely in consideration of the promises and acts"

of the governor.

Laws of 1913, chapter 146, p. 455, § 3, provides that,

"If the acts complained of in the charge or [are] acts of malfeasance or misfeasance while in office, or a violation of the oath of office, as specified in the Constitution, the officer with whom the charge is filed shall formulate a ballot synopsis of such charge of not to exceed two hundred words, which shall set forth the name of the person charged, the title of his office, and a concise statement of the elements of the charge, and shall notify the persons filing the charge of the exact language of such ballot synopsis, and attach a copy thereof to and file the same with the charge, and thereafter such charge shall be designated on all petitions, ballots and other proceedings in relation thereto by such synopsis." Rem. Rev. Stat., § 5352 [P. C. § 2307].

Following the filing of the charges with the auditor of King county, the present action was instituted by Senator Roberts, seeking a decree permanently enjoin-

ing the auditor from preparing a ballot synopsis or taking any of the other steps required of him by statute in the furtherance of the charges; and that the court decree that the charges be declared not to constitute misfeasance or malfeasance in office or a violation of the oath of office of the plaintiff as a state officer. The proponents of the charges, with Millikin, the county auditor, were named as defendants.

The amended complaint alleged that the charges filed against the plaintiff were false and untrue and maliciously made for the purpose of injuring his good name and reputation as a state officer and citizen of the community; that Senate bills 46, 47, and 48, referred to in the charges, were known as the social security "stop-gap" bills, and that it was well known among the members of the legislature that, if these bills were not passed, the Federal government would refuse to pay the state "matching funds"; and that, without such aid, the state program of social security would be seriously handicapped, if not destroyed.

It is further alleged that the bills were of an emergency character and their immediate passage was necessary to insure the continued payment by the Federal government of matching funds; that Senate bill 70, referred to in the second charge, provided for the appropriation to keep the parks and playgrounds of the state open to the general public and was for the general welfare of the citizens of the state; that Senate bills 46, 47, and 48 passed the senate with substantial majorities; and that Senate bill 70 passed the senate without a dissenting vote and, likewise, was passed by the house of representatives without any dissenting votes.

It was denied that the plaintiff, or any other member of either branch of the legislature, personally or remotely, profited by the enactment of any of the bills mentioned in the charges.

It was alleged that there was not then, nor has there ever existed in the state of Washington, a political subdivision known as the "35th legislative district," and that the plaintiff was not an officer of the thirty-fifth legislative district, as set forth in the charges. It was also alleged that chapter 146, Laws of 1913, providing the procedure for the recall of public officers, is unconstitutional, in that it exceeds the authority granted by the recall amendment to the state constitution. It was finally alleged that the charges filed against the plaintiff do not constitute legal grounds for his recall, but that the county auditor, Millikin, was about to prepare a ballot synopsis of the charges and to perform the other acts required of him by chapter 146, Laws of 1913.

The defendant Millikin, appearing separately, moved to strike certain paragraphs of the complaint on the ground that the allegations contained in them were irrelevant, immaterial, and redundant. A demurrer was also interposed by him on the grounds that the court had no jurisdiction of the subject matter, and that the amended complaint did not state facts sufficient to constitute a cause of action. The other defendants moved to quash plaintiff's show cause order and demurred to the complaint.

At the conclusion of the hearing upon the demurrers and motions, the court granted the motion of defendant Millikin to strike one paragraph of the amended complaint, and denied all the rest of the motions interposed by the parties. The demurrers were overruled, and the defendants, electing to stand upon their motions and demurrers, declined to plead further; whereupon, judgment was entered permanently enjoining the defendant Millikin, as auditor of King county, from preparing the ballot synopsis to the recall charges and from doing any other act with relation to

them. The defendants, other than Millikin, joined in an appeal from the judgment; Millikin, as auditor, took a separate appeal.

As the trial court filed no memorandum of opinion, the grounds upon which its conclusion was based are not disclosed by the record. The respondent states that the issues involved on the appeal are:

"(1) May the superior court enjoin proceedings to recall a public officer based upon charges which those who filed the recall petition admit are false and malicious?

"(2) May the superior court enjoin such proceedings when the proponents of such recall admit that the office is not described as provided by statute?

"(3) May the superior court enjoin recall proceedings when the complaint for injunction recites that the act is unconstitutional, and the demurrer admits it?

"(4) May the superior court enjoin such recall proceedings where the proponents of such recall admit that the charges do not constitute legal charges for recall of plaintiff?"

It will be observed that the respondent relies to some extent upon the admissions of the appellants' demurrers to the complaint. The appellants attacked the complaint by demurrers and by a motion to strike irrelevant and immaterial allegations. The complaint alleged that the charges were "false and untrue and maliciously made for the purpose of injuring the good name and reputation of the plaintiff . . ."

If the court is not authorized to inquire into the truth of the charges or the motive of the parties filing them, then, of course, these allegations of the complaint were immaterial and irrelevant to the issues, and should have been stricken.

In *Cudihee v. Phelps*, 76 Wash. 314, 136 Pac. 367, it is held that the truth of the charges upon which the officer is sought to be recalled is triable solely before the people.

"The people, speaking in the manner provided by law, may discharge their public officers for any cause, or without any cause, as their laws may provide. Indeed, the people's rights are as complete in that respect as when they choose such officer. In other words, as against the people, a public officer, their servant, has no rights whatever, so far as his possession of the office is concerned, which may not be ignored by the people speaking in a lawful manner. While it seems true that, under this constitutional provision, an officer is to be removed for cause only; yet, the question being purely a political one, unless expressly provided otherwise by statute or constitution, it is manifest that the tribunal before which the sufficiency of the cause is to be tried is that of the people. It may be that the courts have jurisdiction to determine the sufficiency of the statement of the allegations made as cause for removal if presented in a proper proceeding involving the question of the calling of the election, but the trial of the question of whether such cause actually exists, and as to whether the officer shall be discharged, is to be had before the tribunal of the people and decided by them at the polls."

Now, if the courts are without power to inquire into the truth of the charges, they are, with much greater reason, without power to inquire into the motive of the persons filing the charges. The extent of the court's right to intervene in a recall proceeding is prescribed in § 14 of the act, p. 461, which provides that the court shall have original jurisdiction to compel the performance of any act required of any officer under the provisions of the act,

" . . . in case such officer refuse to perform the same, or to prevent the performance by any such officer of any act in relation to the recall not in compliance with the provisions of this act; . . ." Rem. Rev. Stat., § 5363 [P. C. § 2318].

Under the act, the auditor's function, in relation to the charges, is to prepare a ballot synopsis if he finds

that they sufficiently charge malfeasance or misfeasance or breach of official oath; or to refuse to prepare the synopsis if he finds the charges insufficient. In either case, the correctness of his determination is subject to review by the court. There is nothing in the constitution or statute in anyway implying a right in the auditor, or in the court, to inquire into the motive of the proponents of the charges. Their motive, in so far as it bears upon the issues, is, like the truth of the charges, triable to the tribunal of the people at the polls. Courts would be treading upon dangerous ground if they should assume to make the exercise by the citizens of rights granted by the constitution and laws dependent upon considerations of motive. A bad motive may inspire an act appearing on its face valid and beneficial, while a bad and invalid act may be, and sometimes is, done with good intent and the best of motive.

The complaint alleged that chapter 146, Laws of 1913, is unconstitutional, and the respondent argues that the demurrers admit the truth of the allegation. The allegation is not one of fact, but a conclusion of law; so, too, the allegation in the complaint that the charges are insufficient for the recall of the respondent. Whether they are or not, is a question of law, not of fact.

As we view it, there are three questions properly before the court on this appeal:

(1) Whether the charges are fatally defective in that they specify that the respondent is a senator from the "35th legislative district," instead of from the "thirty-fifth senatorial district"; (2) whether the charges state acts of malfeasance or misfeasance; and (3) whether chapter 146, Laws of 1913, is constitutional.

The reapportionment act, adopted at the 1930

general election, Laws of 1931, chapter 2, p. 31 (Rem. Rev. Stat., § 8137-1 [P. C. § 3557-1] *et seq.*), provides that the senate shall consist of forty-six members, one of whom shall be elected from each of the forty-six senatorial districts therein established. It is provided that the house of representatives shall consist of ninety-nine members, who shall be elected from the forty-six representative districts outlined in the act. The boundaries of the several senatorial and representative districts are the same, and they bear the same numbers. The boundaries of the thirty-fifth senatorial district and the thirty-fifth representative district, in King county, are the same; they are both defined as embracing "the following precincts in the city of Seattle, in King county: 233 to 238, inclusive, and 244 to 280, inclusive."

In practical effect, the plan of the act is to divide the state into forty-six districts for legislative purposes, each district electing one senator and one or more representatives. These districts might be referred to with propriety, if not with technical accuracy, as legislative districts, and, indeed, they are commonly so referred to.

It is to be borne in mind that the filing of the charges with the county auditor is the initial step in the recall process. He is to prepare a ballot synopsis for printing upon petitions, which thereafter are to be circulated for the signatures of electors. The county auditor could not be misled as to the district represented by the respondent in the state senate, and it may be assumed that, in the preparation of the ballot synopsis, the reference to the district would be made with technical accuracy.

We think this objection without merit.

On the question of the sufficiency of the charges, the case of *Pybus v. Smith,* 80 Wash. 65, 141

Pac. 203, Ann. Cas. 1915A, 1145, L. R. A. 1915A, 285, seems to us to be decisive. In that case, the charge, as recited in the court's opinion, was:

"It is alleged in the charge made against appellant, in substance, after stating in some detail various matters pending before the city council, that he specially desired certain action to be taken by the city council in certain of these pending matters; that other councilmen especially desired certain action to be taken by the city council in certain others of these pending matters; and:

" 'That said E. T. Pybus and said councilmen Zener, Hines and Wilson, each well knowing said facts as above alleged, and while in office as said councilmen, on or about the 6th day of January, 1914, and for the sole purpose of carrying out their respective wishes in the premises and preventing said matters and appointments from being fairly and impartially determined by said councilmen, solely on the merits thereof according to the best and uninfluenced judgment of said several councilmen, did wilfully, knowingly, intentionally and unlawfully conspire together and mutually enter into an improper, unlawful and corrupt understanding and agreement to cast their several votes on said propositions as follows, to wit:

" 'E. T. Pybus agreed to cast his vote to reject the appointment of N. Inscho as chief of police and in consideration therefor, W. R. Wilson agreed to cast his vote in support of and to adopt the said proposed Sunday closing ordinance.

" 'E. T. Pybus further agreed to cast his vote to reject the confirmation of F. M. Berry as city engineer and in consideration therefor C. A. Hines agreed to cast his vote in support of and for the adoption of said proposed Sunday closing ordinance; all of said parties agreed with each other that said several propositions should be voted upon by them and each of them alike and in the following manner, that is that they would each vote to reject the appointment of N. Inscho as chief of police, to reject the appointment of F. M. Berry as city engineer, and to adopt and pass the Sunday closing ordinance, and to confirm the appointment of one

W. W. Gideon (the father-in-law of said councilman
C. R. Zener) as chief of police if the mayor of said city
could be prevailed upon to appoint said Gideon to said
position.' "

In sustaining the sufficiency of the charge, the court
said:

"Whether this appellant could be convicted of a mis-
demeanor in our state upon the charge here made may
be regarded as somewhat doubtful. But we are, how-
ever, of the opinion that the facts here charged against
the appellant, if true, do constitute malfeasance in
office on his part, within the meaning of that word as
used in our constitutional and statutory recall provi-
sions, and form sufficient legal cause for submitting to
the voters of the city the question of his recall and dis-
charge from public office. The following authorities
lend some support to this view, though we do not cite
them as being directly in point: *Minkler v. State ex
rel. Smithers,* 14 Neb. 181, 15 N. W. 330; *State ex rel.
Tilley v. Slover,* 113 Mo. 202, 20 S. W. 788; *Bradford v.
Territory ex rel. Woods,* 2 Okl. 228, 37 Pac. 1061;
Mechem, Public Officers, § 458. In the text of 9 Cyc.
485, touching the illegality of contracts which tend to
interfere with the proper administration of govern-
ment, the learned editors say:

" 'A people can have no higher public interest, except
the preservation of their liberties, than integrity in the
administration of their government in all its depart-
ments. It is therefore a principle of the common law
that it will not lend its aid to enforce a contract to do an
act which tends to corrupt or contaminate, by improper
and sinister influences, the integrity of our social or
political institutions. Public officers should act from
high consideration of public duty, and hence every
agreement whose tendency or object is to sully the
purity or mislead the judgments of those to whom the
high trust is confided is condemned by the courts. The
officer may be an executive, administrative, legislative,
or judicial officer. The principle is the same in either
case.' "

There is no material difference between that case and the one before us; indeed, the proponents of the present charges seem to have drafted them with the *Pybus* case in mind. We think the charges sufficient.

■ The respondent and the attorney general, who has filed a brief as *amicus curiae,* contend that the recall act, or at least those portions of it which provide for a preliminary filing of charges with the county auditor and the preparation of a ballot synopsis to be printed upon the recall petitions, thereafter to be circulated for signatures of the voters, is unconstitutional. They argue that this is so because the constitution provides that a public officer may be recalled on the petition of a specified percentage of legal voters filed with the proper officer, but makes no provision for the filing of charges by one or more voters preliminary to, and as a prerequisite for, the filing of the recall petition.

The statute does not attempt to change the provisions of the constitution in respect to the filing of petitions for recall bearing the signatures of the requisite number of voters. It was passed in response to a mandate of the recall amendment to the constitution, Art. I, § 34, to the effect that

"The legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33) of this article, and to facilitate its operation and effect without delay: . . . "

The act has been in effect for twenty-six years. In that period, at least fifteen cases arising under it have been before this court. In two of these cases, *Cudihee v. Phelps,* 76 Wash. 314, 136 Pac. 367, and *State ex rel. Lynch v. Fairley,* 76 Wash. 332, 136 Pac. 374, the constitutionality of the statute as a whole was upheld. The provision requiring the preliminary filing of the

charges and the preparation of a ballot synopsis, is challenged for the first time.

The rule that every intendment is to be indulged in favor of the constitutionality of a legislative act, is reinforced in the present instance by the fact that the recall process outlined in the act has been, for a quarter of a century, accepted as part of the permanent public policy of the state. The constitution itself, other than declaring the right to recall and prescribing the officer with whom the recall petitions are to be filed and the required number of signatures, does not outline the procedure to be followed. The matter of procedure was, in a large measure, and of necessity, left to the discretion of the legislature. The express mandate that the legislature should, without delay, pass the necessary laws to carry out the provisions of the constitution and facilitate its operation, implies that this provision was not deemed self-executing, but required legislation to make it operative.

The statutory procedure for making the right of recall effective, follows closely the plan embodied in another act of the 1913 legislature, chapter 138, p. 418 (Rem. Rev. Stat., § 5397 [P. C. § 2750] *et seq.*), regulating the procedure for exercise of the right of direct legislation by the people under the initiative and referendum provisions of the constitution, also adopted at the 1912 general election. (Art. II, § 1, 7th amendment.)

Chapter 138, p. 418, § 1, provides that, whenever any legal voter or committee or organization of legal voters shall desire to propose a measure for submission to the legislature, or to the people upon an initiative petition, or desire to order by petition the referendum of any act, bill, or law passed by the legislature,

". . . he or they shall file in the office of the secretary of state five printed or typewritten copies of

the proposed measure or of the act or part thereof on which a referendum is desired, accompanied by the name and postoffice address of the person, committee or organization proposing the same, . . . " Rem. Rev. Stat., § 5397 [P. C. § 2750].

It is also provided that, after filing, the secretary of state shall forthwith transmit to the attorney general a copy of the measure bearing the serial number. The attorney general is required, within ten days after receipt of the measure, to formulate and transmit to the secretary of state a ballot title of not to exceed one hundred words. The ballot title formulated by the attorney general is to be the ballot title of the measure unless changed on appeal to the courts.

Now, all this procedure is preliminary and additional to that prescribed in the constitution, as much so as the procedure preliminary to the filing of the recall petitions. If the recall provision is obnoxious to the constitution, the like provision in the initiative and referendum statute is unconstitutional. Initiative and referendum proposals have been more numerous than recall proceedings, many measures initiated have been enacted, and laws passed by the legislature have been successfully suspended.

Each of these measures for direct legislative action by the people has been referred by the secretary of state to the attorney general for preparation of a ballot synopsis without, so far as we are advised, a challenge from him as to the constitutionality of the act. Certainly, if there could ever be a case where long acquiescence in departmental construction of a statute should be given weight, it is here.

But, independently of long acquiescence in the challenged provisions of the act, we are of the opinion that, considered on its merits, the provision for the filing of charges and the preparation of a ballot synopsis pre-

liminary to the circulation of the petition, is a reasonable and proper one, wholly consistent with the constitution, and designed and intended to facilitate the right of recall. This requirement is in line with the other provisions of the act intended to restrain corrupt practices in the recall process. None of the regulatory provisions of the act can be said, with reason, to unduly hamper the right of recall.

Our conclusion is that the motion to strike should have been granted and the demurrers sustained. The judgment of the trial court is reversed, and the cause remanded to the superior court for further proceedings in accordance with the views expressed in this opinion.

BLAKE, C. J., MILLARD, SIMPSON, and JEFFERS, JJ., concur.

