[No. 44778. En Banc. May 18, 1978.]

JEREMIAH M. McCORMICK, *Appellant,* v. OKANOGAN COUNTY, *Respondent.*

*Orvin H. Messegee* and *William S. Howard,* for appellant.

*John Gavin, Special Prosecuting Attorney, Joel E. Smith,* and *Collins & Hansen,* by *Nels A. Hansen,* for respondent.

ROSELLINI, J.—This action was begun with an application for an alternative writ of prohibition directed to the commissioners and auditor of Okanogan County, to prevent their taking any steps to call an election for the recall of the appellant as prosecuting attorney. Certain irregularities in the filing of recall petitions were alleged.

The Superior Court found *inter alia* that, while the petitions submitted to the auditor were not accompanied by a sworn certification (required under RCW 29.82.070), that defect was cured by the treasurer of the recall campaign when she filed an affidavit 2 weeks later. It further found that the canvassing of the votes less than 5 days after the affidavit was filed did not prejudice the appellant, that he had sufficient notice of the canvass, and that to order a recanvass would require a useless act, the correctness of the count not being questioned.

A motion filed by the appellant for authority to conduct discovery proceedings against the recall petitioners was denied, and attorney fees were awarded to the proponents for having to defend against this motion.

After denial of the writ, an election was held and the appellant was recalled. The propriety of the election procedure has not been questioned.

It appears that on January 6, 1977, the recall committee delivered to the county auditor signed petitions seeking the recall of the appellant. Accompanying these petitions were schedules which showed the names of the contributors to the recall campaign fund together with the post office addresses of the contributors and amounts contributed by each.[1] The petitions also contained an itemized statement of the funds disbursed and a statement setting forth the total amount of money collected, expended and remaining in the fund. At about the same time a "list of solicitors" was also filed with the auditor.

While the schedules filed by the treasurer of the committee, Frances Lovell, contained her certification that the information contained in the cover letter and all attached documents was true and correct to the best of her knowledge and was based on records she had in her possession, the certification was not verified. They were nevertheless accepted by the auditor.

The next day the auditor advised the appellant that these petitions had been filed and that he would be notified of the date of canvassing, so that he could have an observer present if he so desired. On January 10, 1977, the appellant advised the auditor that he intended to challenge the petitions in court, and that he planned to attend the canvassing.

---

[1] "At the time of submitting a recall petition the person, or organization submitting it shall file with the officer to whom such petition is submitted a full, true and detailed statement, giving the names and post office addresses of all persons, corporations and organizations who have contributed or aided in the preparation of the charge and in the preparation, circulation and filing of the petition, with the amount contributed by each, and a full, true and detailed statement of all expenditures, giving the amounts expended, the purpose for which expended and the names and post office addresses of the persons and corporations to whom paid, which statement shall be verified by the affidavit of the person or some member of the organization making the charge and until such statement is filed the officer shall refuse to receive the petition." RCW 29.82.070.

On January 17, 1977, the auditor informed the appellant that the canvassing would take place on January 19. On that same day the appellant filed this proceeding in Superior Court, alleging as grounds for the writ that the requirements of RCW 29.82.070 had not been met.

On January 19, an affidavit was filed with the auditor, wherein Frances Lovell verified that each of the documents theretofore filed by her and by Wally Lauterbach (another proponent) containing the statements and reports of persons, corporations, and organizations who had contributed or aided in the preparation, circulation and filing of the petitions, and the statement of expenditures were true and correct to the best of her knowledge and were based on the records which she had in her possession as treasurer of the committee.

The appellant elected not to attend the canvassing or to have a representative present. The correctness of the canvass was not challenged in the superior court proceeding, upon which a hearing was held on February 2, 1977, terminating in the court's refusing to stay the election.

The appellant first contends that the verification of January 19 was insufficient because it did not specify which persons had aided in the preparation of the charge.

 The right of the people to recall their elected officials is reserved in Const. art. 1, §§ 33, 34 (amendment 8):

§ 33 RECALL OF ELECTIVE OFFICERS. Every elective public officer of the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance of misfeasance while in office, or who has violated his oath of office, stating the matters complained of, signed by the percentages of the qualified electors thereof, hereinafter provided, the percentage required to be computed from the total number of votes cast for all candidates for his said office to which he was elected at the preceding election, is filed with the officer with whom

a petition for nomination, or certificate for nomination, to such office must be filed under the laws of this state, and the same officer shall call a special election as provided by the general election laws of this state, and the result determined as therein provided.

§ 34 SAME. The legislature shall pass the necessary laws to carry out the provisions of section thirty–three (33) of this article, and to facilitate its operation and effect without delay: *Provided,* That the authority hereby conferred upon the legislature shall not be construed to grant to the legislature any exclusive power of lawmaking nor in any way limit the initiative and referendum powers reserved by the people.

In *State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 492 P.2d 536 (1972), we observed that our constitution establishes a very broad right of the electorate to recall elective public officials. The challenge in that case was to the sufficiency of charges set forth in a recall petition.

The rules which guide the courts in examining the sufficiency of such charges, which are set forth there, exemplify the principle that the judiciary must exercise restraint in interfering with the elective process which is reserved to the people in the state constitution.

Our cases in which we have held that an election will not be set aside for a mere informality or irregularity which cannot be said in any manner to have affected the result of the election also illustrate that principle. Among them are *State ex rel. Dore v. Superior Court,* 171 Wash. 423, 18 P.2d 51 (1933) (holding an election notice sufficient even though it contained an inaccurate description of the office to be filled); *School Dist. 81 v. Taxpayers,* 37 Wn.2d 669, 225 P.2d 1063 (1950) (holding that election notice requirements are not mandatory); *Vickers v. Schultz,* 195 Wash. 651, 81 P.2d 808 (1938) (holding that the failure to post notice of an election, as required by statute, would not vitiate the election where it was shown that the purpose of the notice was served by the wide publicity given the election);

*Seymour v. Tacoma,* 6 Wash. 427, 33 P. 1059 (1893) (holding that an election would not be defeated by such irregularities as posting notice 26 days rather than the 30 days required by statute); *Rands v. Clarke County,* 79 Wash. 152, 139 P. 1090 (1914) (holding that failure to post notice did not render an election invalid and citing a number of cases which had previously held that notice requirements are directory rather than mandatory, unless the legislature has specifically provided that failure to post notice will invalidate the election); and *Murphy v. Spokane,* 64 Wash. 681, 117 P. 476 (1911) (holding that an election was not invalidated by the failure of the election officers to observe or comply with the statutory requirements that a certain number of election officers be selected and qualified in a specified manner, that they be present at all times, that they take an oath of office, or that the polls be opened on time and kept open during the time prescribed by law).

In *Murphy v. Spokane, supra* at 684, we quoted with approval the statement of the rule found in McCrary on Elections § 225:

"If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute, must so hold, whether the particular act in question goes to the merits or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

And in *Knowles v. Holly,* 82 Wn.2d 694, 699, 513 P.2d 18 (1973), we reaffirmed the statement found in *State ex rel. Orr v. Fawcett,* 17 Wash. 188, 49 P. 346 (1897), that the elective process,

though a constitutional privilege and right, must be exercised under such reasonable legislative restrictions as will prevent intimidation, bribery and fraud and secure an honest, untrammeled and genuine expression of public sentiment. It is also true, however, that in the absence of constitutional inhibition all statutes tending to limit the citizen in the exercise of the right of suffrage should be liberally construed in his favor.

It will be observed that the constitutional provisions do not require the filing of a verified statement of all who have contributed to or aided in the preparation of the charge and in the preparation, circulation and filing of the petition. The essential requirements of the constitution are a statement of charges and the signatures of the necessary percentage of voters, both of which were met here. The verified statement is called for in RCW 29.82, which was enacted pursuant to the authority granted in Const. art. 1, § 34 (amendment 8).

It would appear that the paramount purpose of this requirement was to aid in the prevention of those corrupt practices which are enumerated in RCW 29.82.220. It is not suggested that any of these practices occurred in the preparation and circulation of this recall petition. It is the appellant's theory that the purpose of the provision was to provide the elective official sought to be recalled with information as to the exact nature of all services performed by persons who contributed or aided in the campaign. We do not find such an intent expressed in the act. While the names and addresses of all such persons are required to be given, the only requirement of specification pertains to financial contributions. The statement must show the "amount contributed by each" and a detailed statement of expenditures. Furthermore, there is no requirement that a copy of this statement be furnished to the official who is the subject of the recall petition.

The appellant cites the case of *State ex rel. McCauley v. Gilliam,* 81 Wash. 186, 142 P. 470 (1914), which he argues establishes his contention that the act requires the detailing of the services performed by each participant in the recall

campaign. While there is language in that opinion which lends itself to that interpretation, we think the case must be read in light of the relator's contention there, which was that the recall petition was insufficient because it had listed only the names of financial contributors and detailed expenditures, and had not listed the names and addresses of others who contributed only services. While the opinion is somewhat confusing, its general import is that the legislature intended that the identity and addresses of all participants should be revealed. If it was the court's intent to broaden the provisions of the statute to require specification of the services performed by each participant in the campaign, it overlooked the rule that statutes regulating the elective process should be liberally construed in the voter's favor. *Sudduth v. Chapman*, 88 Wn.2d 247, 558 P.2d 806, 559 P.2d 1351 (1977). We will not presume that it was the court's intention to pursue such a course.

In accord with our view, when a question of the adequacy of a petition was before this court again in *Thiemens v. Sanders*, 102 Wash. 453, 173 P. 26 (1918), it was held that the county auditor must file a statement if duly verified, without investigating its truth, and the fact that there were a number of names without cash contributions did not invalidate the petition. While the opinion did not discuss the relevance of the statutory requirement that all participants in the recall campaign, whether or not they made cash contributions, should be listed, it is evident that the petitioners there had listed all such participants, as required by the statute, and that those for whom no contribution was designated had contributed other services. In other words, the statement there contained the same type of information as the statement in the present case. We find that statement sufficient under the statute.

It is next suggested that the auditor was without authority to canvass the signatures on the petition because the statement, as originally submitted, was not made under oath. The Superior Court held that this defect was cured when a sworn verification was submitted on the date of the

canvassing, a conclusion with which we agree. The appellant urges that the requirement that an affidavit accompany the statement at the time of submission is mandatory, because the auditor is directed to refuse to accept a petition without it. Such an interpretation is out of harmony with the rules which we have previously cited, which require that the people's right to recall their elective officers be not hindered by technicalities and which make mandatory only those legislative provisions which carry with them an express declaration that failure to abide by their requirements shall void a subsequent election, or which affect its actual merits. It is not suggested that the failure to secure a notarization of the petitioners' statement had any impact on the canvassing of the signatures or the conduct of the election, or indeed that it resulted in any prejudice to the appellant. While the statute requires the affidavit, the failure to include it at the time the petitions were submitted is not an irremediable omission; and certainly not one which should occasion the setting aside of an election, without a showing that either the respondent or the voters suffered some prejudice as a result of it.

This conclusion is in harmony with the view taken by this court in other cases involving tardy affidavits. The failure to attach an affidavit, being an amendable defect, we have said, is not fatal unless injury directly caused thereby has been shown. Since the matter is more one of form than of substance, substantial compliance is sufficient. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965); *Whitney v. Knowlton,* 33 Wash. 319, 74 P. 469 (1903).

The appellant cites *State ex rel. Uhlman v. Melton,* 66 Wn.2d 157, 401 P.2d 631 (1965), a mandamus action in which certain taxpayers sought to compel the city clerk to canvass their referendum petitions. It appeared that the petitions had not been filed within the time required by law. We followed the general rule that time requirements with respect to referendum petitions are mandatory. This rule is based upon the fact that if such a petition is not

filed before the effective date of the act which is sought to be referred, the act becomes a law and the only remedy of the voters is through attempted repeal. Thus the element of time is one which affects the merits of the election. The filing of an affidavit has no comparable effect upon the merits of a recall election.

RCW 29.82.160 provides a remedy for noncompliance with the provisions of the chapter. A party may apply to the court for an order to compel the performance of an act required by the statute, or prevent an act not in compliance with the law. The appellant availed himself of that remedy. Had no affidavit been filed before the matter was heard, the court would have been justified in ordering the auditor to reject the petitions. But inasmuch as a proper affidavit had been filed at that time and the signatures had been canvassed, the court realized that to order a recanvass (which would have been necessary if the notice requirements of RCW 29.82.080 were to be strictly followed) would be to decree a useless act.

The appellant had received notice of the canvassing and elected for reasons of his own not to attend or to have a representative present. The court did not err in concluding that the deviation from the prescribed statutory procedure had resulted in no prejudice to the appellant and that it did not justify the invalidation of a canvassing procedure, the results of which were not challenged, and which would only be needlessly repeated if the court were to declare it a nullity.

■ Error is assigned to the court's denial of the appellant's motions for discovery, directed to the proponents of the recall, by which he proposed to elicit information with respect to the recall charges. He concedes that he has no authority for his theory that discovery should be available to an official who is the subject of a recall campaign under CR 37. This rule applies to civil proceedings in court and not to the political arena. It is suggested that the discovery device would be a useful one in a recall campaign, because the right of recall is subject to abuse. While this may be

true of the recall procedure, that process is established by the constitution, and its wisdom is not for the courts to determine. *State ex rel. LaMon v. Westport,* 73 Wn.2d 255, 438 P.2d 200 (1968). Under the constitutional provision, the legislature is given the authority to regulate the campaign and election. It has not to date seen fit to provide for "discovery" by a charged official as a means of discouraging or preventing abuse. Were there such a statutory right, we would be faced with the question whether it placed an undue burden on the people's right to recall their elective officials.

The appellant objects to the court's award of attorney fees to the proponents, as an incident to the denial of his motions for discovery. Such an award was authorized by the rule. His theory is that, if the benefits of the rule are not available to him, he should not be subject to its penalties. He overlooks the fact that by invoking the rule, he put the proponents to the trouble and expense of defending against the motion. The award of attorney fees to the opponent is authorized only where the moving party is unable to establish his right to discovery. The award was proper.

The judgment is affirmed.

WRIGHT, C.J., HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.