[Nos. 50885–2, 50886–1,   En Banc.   December 26, 1984.]
50887–9, 50888–7.

DAVID CHANDLER, ET AL, *Appellants,* v. LOTTIE
OTTO, *Respondent.*

*Ries & Kenison,* by *Harry E. Ries,* for appellants.

*Collins & Hansen,* by *Nels A. Hansen,* for respondent.

PEARSON, J.—This case involves a recall petition filed against members of the Moses Lake City Council. The issue presented is whether the charges propounded in the petition allege sufficient grounds for recall. The trial court, pursuant to RCW 29.82.010, as amended by Laws of 1984, ch. 170, conducted a hearing to determine the sufficiency of the charges and adequacy of the ballot synopsis and concluded that the charges were sufficient. We hold that the recall charges were legally insufficient to serve as the basis for a recall election. Accordingly, we reverse the decision of the trial court.

The salient facts are as follows. In early 1984 the City of Moses Lake invited bids from interested persons desiring to contract with the City for the handling of the City's solid waste. The invitations for bids called for a bid opening on April 27, 1984. The bids were opened on that date and there were seven bidders. Superior Refuse Removal submitted the lowest bid. Shortly after the opening it was discovered that Superior's bid failed to fully comply with the

invitation in that some of the pages were not signed as required. Similarly, the second lowest bidder, Western Refuse, had also failed to sign all the pages of its bid. The third lowest bidder was Lakeside Disposal. Lakeside had complied with the invitation and signed each proposal page.

At its regular meeting on May 22, 1984, the City Council considered the seven bids. After some discussion about whether the Council could waive the irregularities in the bids submitted by Superior Refuse and Western Refuse, the Council voted 4 to 3 not to waive the irregularities and awarded the contract to Lakeside Disposal as the lowest responsible bidder. Thereafter on July 12, 1984, a petition for recall was filed against each of the four councilmen who had voted to award the contract to Lakeside. The petition alleged the foregoing facts and contended that the actions of the councilmen were an abuse of discretion, done in contravention of the public interest, and would result in increased costs to the citizens of Moses Lake.

On July 24, 1984, a ballot synopsis was prepared by Paul A. Klasen, Jr., Grant County Prosecuting Attorney. On August 9, 1984, a hearing was held in the Superior Court for Grant County wherein the judge determined that the allegations contained in the recall petitions were sufficient to warrant proceeding with the recall election. The councilmen immediately appealed this decision.

Recall is the electoral process by which an elected officer is removed before the expiration of the term of office. Provisions for the recall of public officers did not appear in the Washington Constitution until 1912 when a constitutional recall referendum proposed by the State House of Representatives was passed by the voters. Laws of 1911, ch. 108, § 1, p. 504; Const. art. 1, §§ 33, 34 (amend. 8). This amendment is the only constitutional recall provision that requires a showing of cause before recall will be allowed. Cohen, *Recall in Washington: A Time for Reform,* 50 Wash. L. Rev. 29 (1974). In addition, Washington is one of only a few states that requires a recall petition to allege acts of malfeasance, misfeasance or a violation of the oath

of office. *See* 4 E. McQuillin, *Municipal Corporations* § 12.251b, at 336 n.12 (3d rev. ed. 1979). These requirements indicate that the drafters of Washington's recall provision wanted to prevent recall elections from reflecting on the popularity of the political decisions made by elected officers. *See* 4 E. McQuillin, at 334.

In 1913 the Legislature passed the necessary laws to carry out the provisions of the new constitutional amendment. *See* RCW 29.82. The Legislature did not, however, define misfeasance, malfeasance, or violation of the oath of office. Nor did the Legislature suggest what might constitute cause. Because of this, interpretation of the unique requirements of Washington's recall provision has been the focus of over half the recall cases at the appellate level. *Constitutional Law—Recall of Public Officers: Discretionary Acts Cannot Be a Sufficient Basis for Recall,* 48 Wash. L. Rev. 503, 506 (1973). These cases, in trying to interpret the right of recall, developed a narrow scope of review based on the court's traditional role of nonintervention in political controversies. *Cudihee v. Phelps,* 76 Wash. 314, 136 P. 367 (1913); *McCormick v. Okanogan Cy.,* 90 Wn.2d 71, 578 P.2d 1303 (1978). This scope of review has in most instances allowed the court to uphold nearly every recall petition. Such a narrow scope of review, however, disregards the apparent intent of the framers of the recall provision to limit the scope of the recall right to recall for cause. Furthermore, it has encouraged two abuses:

(1) The charges, though adequate on their face as cause for recall, may lack any factual basis whatsoever;

(2) The charge may be entirely unrelated to the dispute; the real political issue or dispute between the recall petitioners and the elective officer may be submerged beneath the rhetoric of the charge.

Cohen, 50 Wash. L. Rev. at 30.

The narrow scope of review dictated by the vagueness of the enabling legislation has until recently prevented the courts from dealing with these abuses. Recent amendments to RCW 29.82, however, indicate that the Legislature has

finally followed the suggestions of members of this court and has provided safeguards to protect an elected official from being subjected to the financial and personal burden of a recall election grounded on false or frivolous charges. *Bocek v. Bayley*, 81 Wn.2d 831, 839–40, 505 P.2d 814 (1973) (Utter, J., concurring).

In 1976 the Legislature amended RCW 29.82. The statute was amended to require the state official with whom the charges were filed to serve the officer whose recall is demanded with a copy of the ballot synopsis. RCW 29.82-.015. More importantly, the specificity requirements were changed by adding the portions italicized below.

> Whenever any legal voter . . . shall desire to demand the recall and discharge of any elective public officer . . . under the provisions of sections 33 and 34 of Article 1 of the Constitution, he . . . shall prepare a typewritten charge, reciting that such officer . . . has committed an act or acts of malfeasance, or an act or acts of misfeasance while in office, or has violated his oath of office . . . which charge shall state the act or acts complained of in concise language, *giving a detailed description including the approximate date, location, and nature of each act complained of . . .*

(Italics ours.) RCW 29.82.010 (as amended by Laws of 1975, 2d Ex. Sess., ch. 47, § 1, p. 199).

RCW 29.82 was amended for a second time in 1984. First, in addition to believing a charge to be true a petitioner must now *verify under oath that he or she has knowledge of the alleged facts upon which the stated grounds for recall are based.* Laws of 1984, ch. 170, § 1, p. 821. Second, the amendments codify the definitions of misfeasance, malfeasance, or violation of the oath of office in accordance with case law definitions:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act;

(2) "Violation of the oath of office" means the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.

Laws of 1984, ch. 170, § 1, p. 821. *See also Bocek v. Bayley, supra.* Third, a new section requires the recall petitioner to file the petition with a specified officer who will formulate a ballot synopsis. The preparer shall additionally certify and transmit the charges and the ballot synopsis to the superior court and shall petition the superior court to approve the synopsis and to determine the sufficiency of the charges. Hence, under the new statute the superior courts, rather than the prosecuting attorney, Attorney General or Chief Justice of the Supreme Court, are entrusted with initially determining whether the charges are sufficient. Laws of 1984, ch. 170, § 3, p. 823. A fourth section outlines the duties of the superior court.

Within fifteen days after receiving the petition, the superior court shall have conducted a hearing on and shall have determined, without cost to any party, (1) whether or not the acts stated in the charge satisfy the criteria for which a recall petition may be filed, and (2) the adequacy of the ballot synopsis. The clerk of the superior court shall notify the person subject to recall and the person demanding recall of the hearing date. Both persons may appear with counsel. The court may hear arguments as to the sufficiency of the charges and the adequacy of the ballot synopsis. *The court shall not consider the truth of the charges, but only their sufficiency.* An appeal of a sufficiency decision shall be filed in the supreme court as specified by RCW 29.82.160. The superior court shall correct any ballot synopsis it deems inadequate. Any decision regarding the ballot synopsis by the superior court is final. The court shall certify and transmit the ballot synopsis to the officer subject to recall, the person demanding the recall, and either the secretary of state or the county auditor, as appropriate.

(Italics ours.) Laws of 1984, ch. 170, § 4, p. 823.

Our obligation in interpreting the foregoing amendments is to ascertain and give effect to the intent of the Legislature. *Janovich v. Herron,* 91 Wn.2d 767, 592

P.2d 1096 (1979); *Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977); *Herron v. McClanahan,* 28 Wn. App. 552, 625 P.2d 707, *review denied,* 95 Wn.2d 1029 (1981). The changes to RCW 29.82 are presumed to indicate a change in the legislative purpose behind recall petitions. *See In re Adoption of Jackson,* 89 Wn.2d 945, 578 P.2d 33 (1978). We believe the changes indicate a legislative intent to place limits on the recall right, *i.e.,* to allow recall for cause yet free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations. We perceive the legislative amendments to mean that a recall petition must be both legally and factually sufficient.

Factually sufficient means the petition must comply with the specificity requirements of RCW 29.82.010. As noted in *Herron,* at 560, "these statutory requirements ensure that both the public electorate and the challenged elective official will make informed decisions in the recall process." Factually sufficient indicates that although the charges may contain some conclusions, taken as a whole they do state sufficient facts to identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office. *See Amberg v. Welsh,* 325 Mich. 285, 38 N.W.2d 304 (1949); *Tolar v. Johns,* 147 So. 2d 196 (Fla. Dist. Ct. App. 1962).

Legally sufficient means that an elected official cannot be recalled for appropriately exercising the discretion granted him or her by law. *Tolar,* at 199–200. *See also State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 492 P.2d 536 (1972). To be legally sufficient, the petition must state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office. 4 E. McQuillin, *Municipal Corporations* § 12.251b, at 334 (3d rev. ed. 1979).

In analyzing the recall petition in the instant case, we conclude that it is not legally sufficient. Pursuant to RCW 35.23.352–.353, members of Moses Lake City Council have the authority to let contracts, such as the one in question

here, to the "lowest responsible bidder". This authority is well analyzed in 10 E. McQuillin, *Municipal Corporations* § 29.73, at 398 (3d rev. ed. 1981):

> Concerning the inquiry, how the responsibility is to be determined, "the authorities speak with practically one voice," namely, that the officers in whom the power is vested "must determine the fact, and such determination cannot be set aside unless the action of the tribunal is arbitrary, oppressive or fraudulent. The determination of the question of who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a bona fide judgment, based upon facts tending to support the determination." This view has in general been supported by the authorities. The determination of the municipal officials concerning the lowest responsible bidder will not be disturbed by the courts, unless it is shown to have been influenced by fraud, or unless it is an arbitrary, unreasonable misuse of discretion. When the officers have exercised their discretion in the award of the contract, the presumption obtains that such action was regular and lawful, and such presumption can be overcome only by proof that the officers acted without justification or fraudulently.

(Footnotes omitted.)

Respondent's recall petition fails to allege any fraud or arbitrary, unreasonable misuse of discretion. There is no evidence that the appellants exercised their discretion inappropriately. The petition merely attacks the judgment of the councilmen. The exercise of judgment is not grounds for recall. *Tolar*, 147 So. 2d at 200. Hence, the petition does not state with specificity substantial conduct clearly amounting to misfeasance, malfeasance, or violation of the oath of office.

Accordingly, we reverse the decision of the trial court and direct a dismissal of the recall charges.

WILLIAMS, C.J., and BRACHTENBACH, DOLLIVER, DIMMICK, and ANDERSEN, JJ., concur.

276

Utter, J.—I concur but adhere to my views in *Bocek v. Bayley*, 81 Wn.2d 831, 505 P.2d 814 (1973).

Dore, J. (dissenting)—The majority affirms the action of the Moses Lake City Council in refusing to award a 5-year garbage contract to the lowest bidder but instead awarded it to the third lowest bidder, at an additional cost to the Moses Lake taxpayers of $3,000 a month, or $180,000 over the life of the contract. It is undisputed that both are competent contractors. The majority affirms the holding that the Council properly exercised its discretion. I disagree and would hold that the Moses Lake Council's actions were a manifest abuse of discretion, and I believe the citizens of Moses Lake, who have to pay the bill, would agree with me.

From the time this court first decided a case dealing with the recall right promulgated in Const. art. 1, §§ 33 and 34 (amend. 8),[1] to as recently as last year,[2] we have always interpreted the recall provision broadly so as to allow the people to exercise their right of self–governance.

Only last year, we reaffirmed the principle that

> our constitution establishes a very broad right of the electorate to recall elective public officials. *McCormick v. Okanogan Cy.* [90 Wn.2d 71, 578 P.2d 1303 (1978)], at 75. The rights of initiative, referendum, and recall form a weighty triumvirate intended to preserve the people's most basic right of self–governance and any interference with these rights requires strong justification.

*Pederson v. Moser,* 99 Wn.2d 456, 460, 662 P.2d 866 (1983). This broad right of recall has manifested itself by providing the foundation for many of the rules which protect this basic right:

> First, in determining the validity of recall charges, courts are limited to examination of the charges stated and cannot inquire into factual matters extraneous to the allegations. *E.g., State ex rel. LaMon v. Westport,* 73 Wn.2d 255, 438 P.2d 200 (1968). Second, courts must

---

[1] *Cudihee v. Phelps,* 76 Wash. 314, 136 P. 367 (1913).

[2] *Pederson v. Moser,* 99 Wn.2d 456, 662 P.2d 866 (1983).

assume the truth of the charges in determining whether legally sufficient grounds for recall have been stated. *E.g., Skidmore v. Fuller,* 59 Wn.2d 818, 370 P.2d 975 (1962). Third, just as there can be no inquiry into the truth or falsity of the charges, there can be no inquiry into the motives of those filing the charges. *Roberts v. Millikin,* 200 Wash. 60, 93 P.2d 393 (1939). Fourth, recall charges are sufficiently specific if they are definite enough to allow the charged official to meet them before the tribunal of the people. *E.g., State ex rel. LaMon v. Westport, supra.* Finally, any one sufficient charge requires the holding of a recall election. *E.g., Morton v. McDonald,* 41 Wn.2d 889, 252 P.2d 577 (1953).

*State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 124–25, 492 P.2d 536 (1972). The majority now restricts this fundamental right. The majority provides two arguments to justify narrowing the recall right. First, it cites our constitutional requirement that a recall petition allege an act of malfeasance, misfeasance, or a violation of the oath of office. Not once, however, in the past 72 years has this court ever interpreted these requirements to mean that the right of recall should be narrowly construed. Indeed, in the past 72 years this court has always held that the constitution establishes a very broad right of recall. *See, e.g., Pederson v. Moser,* 99 Wn.2d 456, 662 P.2d 866 (1983); *McCormick v. Okanogan Cy.,* 90 Wn.2d 71, 578 P.2d 1303 (1978); *Cudihee v. Phelps,* 76 Wash. 314, 136 P. 367 (1913). The majority fails to explain what prompted it to decide that over 70 years of case law interpreting the recall provision was wrong. Instead, it meekly states that our constitution requires that cause be shown for a recall election[3] and concludes, without provid-

---

[3]The majority erroneously asserts that our constitution is the only one in the nation that requires a showing of cause before recall will be allowed. That is simply untrue. West Virginia's constitution provides that

All officers elected or appointed under this Constitution, may, unless in cases herein otherwise provided for, be removed from office for *official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, . . .*

(Italics mine.) W. Va. Const. art. 4, § 6. Moreover, while some state constitutions

ing any reasoning, that our right of recall has been construed too broadly in the past.

The second justification the majority narrates for its surprising interpretation of the recall provision is that the Legislature, in 1976 and 1984, amended the enabling legislation to the recall provision. The majority asserts that the amendments show that the Legislature intended to narrow the right of recall.[4] As to the 1976 amendment, the majority points to two changes that it asserts show that the Legislature intended to narrow the right of recall. First, it points out that the statute was amended to require that the official who is the subject of the recall receive a copy of the ballot synopsis. RCW 29.82.015. This provision, however, can hardly be characterized as narrowing the recall right. Secondly, the statute was amended to require the petitioner to give a detailed description of the changes, including the approximate date, location and nature of each act complained of. RCW 29.82.010. This provision is a procedural clarification and does not restrict the electorate's right of recall. Instead, it merely ensures that both the public and the challenged official will make an informed decision in the recall process. *See Herron v. McClanahan,* 28 Wn. App. 552, 625 P.2d 707 (1981).

Discussing the 1984 amendment, the majority points to four changes which it claims are evidence that the right of

---

do not explicitly state that cause must be shown, their courts have construed their constitutional recall provisions to require that cause must be shown. *See, e.g., Amberg v. Welsh,* 325 Mich. 285, 38 N.W.2d 304 (1949). Consequently, contrary to what the majority concludes, the drafters of our recall provision did not intend the recall right to be narrowly construed.

[4]The Legislature's authority to enact enabling legislation is limited and cannot be used to change the scope of recall right.

The legislature shall pass the necessary laws to carry out the provisions of section thirty–three (33) of this article, and to facilitate its operation and effect without delay: *Provided, That the authority hereby conferred upon the legislature shall not be construed to grant to the legislature any exclusive power of lawmaking nor in any way limit the initiative and referendum powers reserved by the people.*

(Italics mine.) Const. art. 1, § 34 (amend. 8).

recall has been narrowed. The majority never explains how these changes have narrowed the recall right. Nor could it, since all the changes were either procedural in nature or incorporated this court's interpretation of the constitution's recall provision.[5] Yet the majority still concludes, without citing any legislative history, that the Legislature intended to narrow the recall right.

Consequently, it is clear that our recall provision should be judicially interpreted broadly as it has been for the last 7 decades. Manifestly, the allegations in this recall provision are sufficient.

The majority asserts that there was no abuse of discretion when the Moses Lake City Council refused to accept the lowest bid and, instead, accepted the third lowest bid. The majority finds that this is not an abuse of discretion. It does not cite any cases to support its position; instead, it cites a treatise on municipal corporations which discusses *judicial review* of bid acceptances. The standard a court uses for reviewing an official's conduct is different from the standard the electorate uses for review. The majority may not feel that accepting a higher bid is an abuse of discretion but the voters of Moses Lake might find that the Council's award of a contract, for an additional windfall of $180,000 to the third bidder, was an abuse of discretion, especially when an equally competent contractor (low bidder) admittedly was available for $180,000 less.

The majority claims that the City Council's acceptance of the higher bid was permissible because the two lower bids were not signed on every page. However, *it is undisputed* that the City Council could have accepted the lowest bid even with the technical errors and still had a binding contract.[6] The Council chose not to do so and should now

---

[5]The majority admits that one of the 1984 amendments was merely a codification of prior case law. See majority, at 272.

[6]*Reiner v. Clarke Cy.*, 137 Wash. 194, 201, 241 P. 973 (1926) states: "[S]tatutes requiring competitive bidding are enacted to secure competition, to prevent fraud and defeat grafting; to remove as far as possible all criticism and secure the

be subject to the voters' approval or disapproval of its decision.

I believe that the average person in Moses Lake, if allowed to vote, would find that the Council members who voted for the garbage "windfall" abused their discretion. The majority, by depriving such person of his constitutional right to recall public officials, unfortunately prohibits this.

I would affirm the trial court.

performance of public work at the lowest possible price; that there must be competition where competition is required. It was also held that the terms used in such statutes referring to *'competitive bids,' 'lowest bids,' 'lowest and best bidder,' and 'lowest responsible bidder' are all practically interchangeable and synonymous.* To make distinctions between such terms would be to draw a very fine line." (Italics mine.)