[No. 65856-1. En Banc.]
Considered February 5, 1998. Decided March 12, 1998.

*In the Matter of the Recall of* DAVID M. SANDHAUS,
ADAMS COUNTY PROSECUTOR.

*Joseph F. Quinn*, for appellant.

*Reed & Giesa, P.S.*, by *D. Roger Reed*, for respondent.

*Thomas A. McBride* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Thomas R. Bjorgen* on behalf of Washington State Association of Counties, amicus curiae.

PER CURIAM — Adams County Prosecuting Attorney David Sandhaus appeals from a judgment finding sufficient the charges contained in a recall petition filed against him. We reverse.

## FACTS

On August 5, 1997, respondents Shawn Logan, Jerry Crossler, and Leon Long filed a petition to recall Sandhaus from his office as Adams County Prosecuting Attorney. The petition contained three charges. The first alleged that, with one exception, Sandhaus had failed to provide civil counsel to the Adams County Board of County Commissioners (Board) since July 1996, contrary to the prosecutor's duties set forth in RCW 36.27.020. Respondents attached to the petition a number of documents purportedly supporting this charge. Minutes of a July 1996 Board meeting reflected that "Sandhaus informed the Board that he would handle civil matters as he prioritized them and ultimately defined them within the statute guidelines," and that he "would weigh civil work requests with the need to fight crime." At a meeting in January 1997, when asked whether he "was prepared to accept and process civil matters for the county in 1997," Sandhaus responded "that his position as prosecutor authorized him to prioritize all legal issues received in the [prosecutor's] office."

Respondent Logan, a member of the Board, submitted a supporting declaration stating that, with one exception, which occurred in June 1997, Sandhaus "has refused to perform his statutory duty to provide the County Commissioners with civil counsel." Logan said that, as a result, the Board "has acted without the benefit of civil counsel on matters ranging from ecological concerns to road contracts[.]" Respondent Crossler, the county assessor, also submitted a declaration, alleging that, in the course of an appeal to the State Board of Tax Appeals, Sandhaus failed to respond to a memorandum Crossler wrote to him requesting legal assistance, as a result of which Crossler had to appear before the Board of Tax Appeals without counsel.

The second charge of the petition alleged that in the fall of 1996, Sandhaus made expenditures on certain items in excess of his office's budget for those items, despite express warnings from both the Board and the county auditor that if he incurred further expenses he would exceed the appropriations for his office in violation of state law. Sandhaus purportedly exceeded his 1996 budget by a total of $7,642.85. Logan also supported this charge in his declaration. He said that in the summer and fall of 1996, he and other Board members repeatedly cautioned Sandhaus that he had excessive expenditures, and that in the absence of an emergency or court order, the Board would not amend the budget to allow further expenditures. Also, at the Board's direction, the auditor wrote Sandhaus cautioning him against overspending. Logan said that Sandhaus ignored these warnings and, without Board authorization, overspent his budget in the amount stated above. The Board attempted to collect the overexpenditures against Sandhaus' performance bond.

Respondent Long, a former county auditor, also filed a declaration in support of the second charge. He said that, while serving as auditor, he had to remonstrate with Sandhaus for attempted and actual violation of budget laws. He gave as an example a memorandum Sandhaus wrote to the auditor's office asking that money be transferred from the support enforcement budget to the prosecutor's budget. Long said he told Sandhaus he could not honor the request because it amounted to an amendment of the budget, which required Board approval. Long attached to his declaration a letter he sent to the Board on January 31, 1997, in which he told the Board he believed Sandhaus did not understand the budget process and seemed unwilling to learn. Long wrote that he warned Sandhaus in November 1996 that his budget was "in jeopardy." He said that by year end the prosecutor's budget was overexpended by $473.58 in payroll and $7,169.23 in accounts payable (office supplies and operations and maintenance expenses). These figures also were contained in a letter from Long to the Board dated February 10, 1997, in

which Long formally informed the Board of the budget shortfall. In his letter, Long explained that the items at issue could not be paid because the budget had not been amended, but he said he nonetheless paid them from other funds in order to maintain the county's good credit rating.

In the third charge, respondents alleged that when Sandhaus took office, he failed to secure a performance bond as required by RCW 36.16.060. As a consequence, respondents claimed, no bond existed when the Board first sought to file a claim to recover Sandhaus' overexpenditures. Respondents acknowledged in the petition that Sandhaus later obtained a bond. The declarations of Logan and Long related their personal knowledge of the fact that Sandhaus failed to obtain a bond. Included with the petition were a number of newspaper articles concerning the bond dispute. They show that Sandhaus finally obtained a $5,000 bond in December 1996, but, at the demand of the Board, he later obtained a bond for an additional $10,000. Logan said that at the time he made his declaration the claim against Sandhaus' current bond remained unresolved.

The attorney general's office prepared a ballot synopsis and filed a petition in superior court to determine the sufficiency of the charges.[1] Sandhaus filed a number of documents answering the charges. In his affidavit, he denied that he or any of his deputies ever refused to provide legal advice or services to the Board in response to a request. He admitted that he may not have always provided advice as expeditiously as the Board would have liked in view of the priority he placed on criminal matters, but he disputed that he failed to provide any civil legal advice. He attached to his affidavit numerous memoranda and letters in which he or a deputy provided civil legal advice or services. Though most of these were addressed to officials other than the Board, several were directed at the Board and most concerned matters relevant to the Board's business. In a

---

[1]The prosecuting attorney normally prepares the ballot synopsis for the recall of a county official. Where the prosecuting attorney is the officer whose recall is demanded, however, the attorney general prepares and files the synopsis. RCW 29.82.021(1)(b).

second affidavit, Sandhaus detailed other civil work his office performed.

As to the overexpenditure charge, Sandhaus admitted he overspent on certain line items in his 1996 budget, but he claimed surpluses existed in other items which could have covered the overexpenditures had the Board amended the budget. He said this is a routine practice, but that in this case the Board refused to amend the budget so it could " 'trip up' " a political adversary. He attached to his affidavit a letter he wrote to Long in July 1996 detailing expected overexpenditures on certain items. He also attached a letter from State Auditor Brian Sonntag dated July 29, 1997, concerning a special audit Sonntag's office conducted at Sandhaus' request. In the letter, Sonntag said his office concluded that Sandhaus exceeded budgeted appropriations, but that the county auditor also improperly issued, and the Board improperly approved, warrants for the excessive expenditures. Sonntag did "not consider this to be a serious audit issue," and said that in the normal course his office would note the problem in its exit interview and recommend training to ensure it did not occur again. Sonntag found no evidence "of misfeasance, malfeasance or nonfeasance on the part of any official."

Sandhaus also submitted a letter he wrote to the Board in December 1996 asking that the budget be amended to allow money from surplus items in the prosecutor's budget to be used to pay accounts which showed a deficit. Sandhaus further supplied affidavits from other county prosecutors basically saying it is a common practice for budget line amendments to be made by county legislators.

Finally, concerning the failure to obtain a bond, Sandhaus admitted he did not secure a bond when he took office, but he said he assumed the county auditor secured bonds for all elected officials. A deputy prosecutor from Spokane County submitted an affidavit stating this was the practice in other counties. Sandhaus pointed out that the bond he finally obtained was made retroactive to the beginning of his term, and attached a copy. He also asserted that the

Board's claim against his bond was denied and that the Board was reimbursed for the overexpenditures from the county risk management pool. Documents submitted by Sandhaus supported these assertions. In particular, the surety company denied the Board's claim on the ground that Sandhaus did not misappropriate funds or commit any other "illegal act" covered by the bond.

Based on these materials, the superior court found all three charges legally and factually sufficient for submission to the Adams County voters. Sandhaus appealed directly to this court pursuant to RCW 29.82.023.

## ANALYSIS

 This court reviews recall petitions using the same criteria as the superior court. *In re Recall of Shipman*, 125 Wn.2d 683, 684, 886 P.2d 1127 (1995). Charges must be both factually and legally sufficient. *Id.* at 684-85. To be factually sufficient, a petition must state in detail the acts complained of, and the petitioners must have knowledge of identifiable facts which support the charges. RCW 29.82.010; *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997). "Legal sufficiency" means "the charges must state with specificity ' "substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." ' " *Shipman*, 125 Wn.2d at 685 (quoting *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990)).

 "Misfeasance" and "malfeasance" both mean "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29.82.010(1). "Misfeasance" also means "the performance of a duty in an improper manner," and "malfeasance" includes "the commission of an unlawful act." RCW 29.82.010(1)(a), (b). "Violation of the oath of office" means the "wilful neglect or failure . . . to perform faithfully a duty imposed by law." RCW 29.82.010(2). When an official is charged with violating the law, the petitioners must have knowledge of facts indicating the official intended to commit an unlawful act. *In re Wade*, 115 Wn.2d at 549. Also, officials may not be

recalled for appropriately exercising the discretion granted them by law. *Teaford v. Howard*, 104 Wn.2d 580, 584, 707 P.2d 1327 (1985). Although a court may not determine whether charges are true, it may go outside the petition to determine whether there is a factual basis for the charges. *In re Anderson*, 131 Wn.2d at 95.

We will initially address the first and third charges. As presented in the ballot synopsis, the first charge alleges Sandhaus "refuse[d] to provide legal counsel to the Adams County Board of Commissioners on civil matters from July 1996 through May 1997[.]" Respondents contend Sandhaus thereby violated RCW 36.27.020(1), which requires the prosecutor to be "legal advisor of the legislative authority" of the county and provide it with "his or her written opinion when required by the legislative authority . . . touching any subject which the legislative authority may be called or required to act upon relating to the management of county affairs[.]"

The first charge is factually insufficient. Charges in a recall petition must be made with sufficient precision and detail to enable the electorate and the challenged official to make informed decisions in the recall process. *Shipman*, 125 Wn.2d at 684. The present petition fails to state with specificity or detail any instance in which Sandhaus refused to provide counsel when requested by the Board to do so. Logan said the Board acted without counsel "on matters ranging from ecological concerns to road contracts," but did not identify any particular case in which Sandhaus refused to provide the Board with requested advice. The declaration of Crossler, the county assessor, in which he said Sandhaus failed to respond to his request for assistance in a tax appeal, is irrelevant because the only charge is that Sandhaus refused to provide counsel to the Board.

The minutes of Board meetings also provide no factual basis for the charge. It is clear the Board was displeased with the attention Sandhaus gave to civil matters and disagreed with the priority he apparently placed on criminal cases, but the minutes reveal no refusal on Sandhaus' part

to attend to any particular civil matter. Balancing priorities in a public office with limited funds and personnel is a matter within the discretion of the office supervisor, and whether Sandhaus is doing a satisfactory job of managing his office is a quintessential political issue which is properly brought before the voters at a regular election. Where discretion is involved, the recall petitioner must show manifest abuse. *Shipman*, 125 Wn.2d at 685. The petition here fails to make that showing.

Finally, it should be noted as to the first charge that the undisputed materials Sandhaus has supplied show he in fact provided civil counsel to the Board during the period in question.

The third charge, as presented in the synopsis, is that Sandhaus "fail[ed] to obtain a bond to insure the performance of his duties, until February 1997, although he took office in July 1994[.]" Respondents say this violated RCW 36.16.050, which requires every county official, before assuming office, to "furnish a bond conditioned that he or she will faithfully perform the duties of his or her office and account for and pay over all money which may come into his or her hands by virtue of his or her office, . . . [and] will deliver to his or her successor safe and undefaced all books, records, papers, seals, equipment, and furniture belonging to his or her office." Prosecuting attorneys must obtain a bond in the amount of $5,000. RCW 36.16.050(6).

This charge is neither factually nor legally sufficient. Sandhaus readily admits he failed to obtain a bond before assuming office, but respondents present no facts within their knowledge showing Sandhaus intended to violate the law or wilfully failed to perform his duty to secure a bond. Sandhaus asserted, without dispute, that he assumed the auditor handled the securing of all bonds. He eventually obtained a bond, retroactive to the date he assumed office, so he ultimately cured the oversight. Under the circumstances, the facts do not establish " 'substantial conduct clearly amounting to misfeasance, malfeasance or

violation of the oath of office.' " *Teaford v. Howard*, 104 Wn.2d at 584 (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

Moreover, there is no factual support for the allegation Sandhaus remained unbonded until February 1997. The undisputed record shows he obtained a $5,000 bond in December 1996, and on the Board's demand secured an additional $10,000 bond in January 1997.

The second charge states that Sandhaus "spen[t] more money than the Adams County Commissioners appropriated to his office for specific appropriation items for the 1996 budget year, incurring financial liabilities for the county greater than those budgeted by the Commissioners[.]" Clerk's Papers at 341. Respondents base this charge on several provisions governing county budgets. RCW 36.40.100 states that expenditures "as finally fixed and adopted in detail by the board of county commissioners shall constitute the appropriations for the county for the ensuing fiscal year; and every county official shall be limited in the making of expenditures or the incurring of liabilities to the amount of the detailed appropriation items or classes respectively[.]" Transfers or revisions within departments may be made only by board resolution. *Id.*

In the absence of an authorized amendment or supplement to the budget, "[e]xpenditures made, liabilities incurred, or warrants issued in excess of any of the detailed budget appropriations . . . shall not be a liability of the county, but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond." RCW 36.40.130.

The second charge appears to be factually sufficient. It is undisputed that Sandhaus made expenditures in excess of detailed budget appropriations without the Board's approval. Also, wilfulness can probably be found in evidence showing that Sandhaus knew he was overspending and did so even after the Board and the auditor warned him against doing so. Although Sandhaus claims the Board "set him up" for violating budget limitations by refusing to amend

the budget, it is not the court's task to resolve evidentiary disputes. Respondents' evidence shows the Board forewarned Sandhaus it would not amend the budget. Whether it had some hidden motive for doing so is immaterial to the prima facie factual sufficiency of the charge. *In re Recall of Call*, 109 Wn.2d 954, 958, 749 P.2d 674 (1988).

We nonetheless hold the second charge is legally insufficient. Respondents charge that Sandhaus' overexpenditures caused the County to incur liabilities. As discussed, however, RCW 36.40.130 makes officials personally liable for overexpenditures. The only apparent reason the County incurred liability is that the auditor issued warrants for Sandhaus' overexpenditures with the Board's approval. This itself may have violated RCW 36.40.130, which imposes upon auditors and county commissioners liability for four times the amount of any overexpenditures approved or paid by warrant. The state auditor, though he found Sandhaus exceeded budget appropriations, also found the county auditor improperly issued warrants and the Board improperly allowed the claims. The state auditor nonetheless believed this case presented no "serious audit issue" and found nothing which in his opinion amounted to "misfeasance, malfeasance or nonfeasance on the part of any official." While it is this court's task to determine whether the petition charges Sandhaus with acts sufficient to expose him to recall, the auditor's opinion lends weight to our view that the second charge does not involve substantial conduct clearly amounting to misfeasance, malfeasance, or violation of the oath of office.

We finally observe that Sandhaus will face reelection this year should he choose to seek another term. Although we do not suggest that the imminence of a regular election justifies dismissing a recall petition, we observe that voters who are dissatisfied with Sandhaus' performance will soon be able to voice their views regardless of whether a recall election is held.

## CONCLUSION

All three charges in the recall petition are insufficient.

The superior court's order finding the charges sufficient is reversed.