[Nos. 86899-9; 86900-6.   En Banc.]
Considered July 11, 2012.     Decided August 9, 2012.

*In the Matter of the Petition for the Recall of* DAVID WARD, *Commissioner of Jefferson County Fire Protection District No. 2, Respondent.*

*In the Matter of the Petition for the Recall of* MICHAEL WHITTAKER, *Commissioner of Jefferson County Fire Protection District No. 2, Respondent.*

*Peggy A. Bierbaum*, for appellants.
*Shane R. Seaman* (of *Seaman Law PLLC*), for respondents.

¶1  STEPHENS, J. — David Ward and Michael Whittaker are commissioners for the Jefferson County Fire Protection District No. 2 (District). Two citizens of the District, Harry Goodrich and Linda Saunders (the petitioners), initiated this recall proceeding against Ward and Whittaker, alleging various counts of misfeasance. We must decide if the recall petition should advance to the signature-gathering phase of the recall process. We affirm the trial court and hold that one of the four charges against Ward and Whittaker may advance to the next phase of the recall process.

## FACTS

¶2  Ward and Whittaker are both elected commissioners of the District and have served in that role since 1990. Clerk's Papers (CP) at 499; CP (Whittaker) at 485.[1] In April 2009, the District's longtime fire chief died suddenly. CP at 500. An interim chief was appointed to take over operations while the search for a new chief progressed, but the District's commissioners were to handle administrative functions. CP (Whittaker) at 43 (Ward Decl.). With the death of the fire chief, the District was in administrative turmoil. Ward asserts that by the end of November 2009, he was spending significant time tending to the needs of the District. CP (Whittaker) at 46.

---

[1] There are two sets of clerk's papers in this action. Citations pertaining to the record in Whittaker's case are designated as "Whittaker." All other citations are to the record in Ward's case.

¶3 Ward approached Commissioner Whittaker and the District's third commissioner, Julie McClanahan, about compensation for his efforts. In response to Ward's concerns, at a January 2010 open meeting of the commissioners, Commissioner Whittaker moved to create the position of chief organizational officer (COO) to be filled by Ward. CP at 500. The motion was seconded by Commissioner McClanahan and passed. *Id.* The minutes to the meeting do not reflect whether Ward voted on the motion, but he asserts that he did not. *Id.*; CP (Whittaker) at 46.

¶4 Ward asserts:

> The COO's duties were to locate, recreate and organize District records, acquaint the new Fire Chief whose selection was near, to complete the initial phase of negotiations for preserving the forest land income with DNR [(Department of Natural Resources)], and complete the acquisition of property and buildings from the Forest Service. These were activities that the new Fire Chief would not have any familiarity with, so the COO would remain while the new Fire Chief would learn the operations of the District.

CP (Whittaker) at 46. Thus, Ward served as COO until about August 9, 2011, and his tenure as COO overlapped with the new fire chief, Robert Low, who assumed the duties of chief on February 1, 2011. CP at 391 (Low Decl.).

¶5 During Ward's tenure as COO, the District enrolled in the state Public Employees' Retirement System (PERS). The parties dispute whether the decision to enroll the District took place during an open public meeting. Minutes of the commissioners' February 8, 2010 meeting reflect that during the meeting, following the close of an executive session, the commissioners passed a resolution enrolling the District in PERS. CP at 366-68. But Goodrich and Saunders allege that the PERS resolution was not discussed nor passed upon at the February 8 meeting. They claim that Ward directed the district secretary, Jean Morris, to add discussion and passage of the PERS resolution to the minutes. CP at 501. At the commissioner's March 2010 meeting, Whittaker and McClanahan approved the Febru-

ary minutes containing notation of the PERS resolution. CP (Whittaker) at 47 (Ward Decl.).

¶6 After the District was enrolled in PERS, Ward began reporting 92 credit hours per month based on the time he worked as COO, with a retroactive start date of December 1, 2009.

¶7 The foregoing activities provide the basis of Goodrich and Saunders's recall petition. They allege the following charges against Ward and Whittaker:

> **One:** That the creation of the COO position paying $800 per month without a written job description, expected hours of work, and competitive selection process constitutes an act of misfeasance;
>
> **Two:** That the continuation of the position several months past the start date of the new chief constitutes an act of misfeasance;
>
> **Three:** That the falsification of the meeting minutes to reflect the decision to enroll the district in PERS constitutes an act of misfeasance; and
>
> **Four:** That the retroactive compensation of both salary and PERS credits to Ward constitutes an act of misfeasance.

Overall, Goodrich and Saunders allege these are acts of self-dealing on the part of Ward. Goodrich and Saunders further allege that Whittaker is complicit in these activities as he approved of them all.[2]

¶8 Goodrich and Saunders filed their recall petition on July 14, 2011. CP at 499. They alleged several acts of misfeasance, including the four described above. Only the four charges detailed above survived review by Jefferson County Superior Court Commissioner Keith Harper. CP at 473-74; CP (Whittaker) at 471-72 (ballot synopsis). Whittaker and Ward sought review by a superior court judge. Goodrich and Saunders did not appeal the dismissal of the charges Commissioner Harper struck.

---

[2] Commissioner McClanahan passed away in the spring of 2011 and is not a party to this action. CP (Whittaker) at 44 (Ward Decl.).

¶9 Jefferson County Superior Court Judge Pro Tempore Anna M. Laurie struck three of the four surviving charges. The court found that the creation of and compensation for the COO position did not amount to recallable activity. It concluded the charge was factually insufficient because no allegations of intent to violate a law were made and was legally insufficient because the "need for the COO position was a question of discretion." CP at 504. Likewise, the court concluded that charge two—staying on as COO several months after a new chief was hired—was factually insufficient because petitioners "do not point to any rule, standard or provision of law" that was violated in that instance and was legally insufficient because the duration of the COO position was a discretionary matter. CP at 504-05. However, the court upheld charge three as a knowing violation of the Open Public Meetings Act of 1971, chapter 42.30 RCW, that constituted "substantial" misfeasance. CP at 506. As to charge four, the court concluded that it was not factually sufficient because there were "no grounds presented demonstrating that reporting or compensating from a start date retroactive to the time work actually began is illegal or wrongful." CP at 507. The court found the charge was legally insufficient because it was "legally justified in the WAC [(Washington Administrative Code)] provisions allowing for retroactive membership in PERS for elected officials and other employees." *Id.*

¶10 Goodrich and Saunders appealed the trial court's dismissal of charges one, two, and four. Ward and Whittaker cross appealed the trial court's ruling allowing charge three to stand. We consolidated the matters, and Ward and Whittaker are represented by the same attorney.

## ANALYSIS

¶11 A voter who seeks to recall an elected official must charge that the official "committed an act or acts of malfeasance, or an act or acts of misfeasance while in office, or has

violated the oath of office." RCW 29A.56.110. The statute defines these terms:

(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;

(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and

(b) Additionally, "malfeasance" in office means the commission of an unlawful act;

(2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

¶12 Our review of the trial court decision in a recall action is de novo. *In re Recall of Telford*, 166 Wn.2d 148, 154, 206 P.3d 1248 (2009). In a recall proceeding, a court acts as a gatekeeper to ensure that elected officials are not subjected to frivolous, harassing, or unsubstantiated charges. *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005). "[I]t is not for [courts] to decide whether the alleged facts are true or not." *Id.* "It is the voters, not the courts, who will ultimately act as the fact finders." *Id.* The task of a court in reviewing a recall petition is to ensure that "only legally and factually sufficient charges go to the voters." *Id.*

### Factual Sufficiency

¶13 The facts alleged in a petition are sufficient to proceed to a ballot when, taken as a whole, they "identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office." *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984). In determining whether a petition is factually sufficient, we assume the veracity of allegations made so long as they are reasonably specific and detailed.

*See In re Recall of Sandhaus*, 134 Wn.2d 662, 668-69, 953 P.2d 82 (1998).

█ ¶14 Judge Laurie found three of the four charges were factually insufficient. Her reasons, however, do not appear to account for a court's limited role in reviewing factual sufficiency. For example, as to charge one, Judge Laurie complained that while the petitioners' facts alleged a violation of the law regarding fire district commissioner compensation, they did not allege any intent on the part of Ward to violate the law. CP at 504. This seems to be more appropriately considered as part of the court's review of legal sufficiency. Factual sufficiency requires assertions be made in good faith with reasonable detail and specificity. *See Sandhaus*, 134 Wn.2d at 668-69. Here, Goodrich's and Saunders's factual assertions are specific and detailed. In addition to themselves, they present several declarations from people claiming to have firsthand knowledge of the events at issue, including Secretary Morris, District Fire Chief Robert Low, and volunteer fireman Michael Eastman. These declarants in fact comprise all the people in attendance at the disputed February 8, 2010 meeting, aside from Ward, Whittaker, and McClanahan. While Ward, Whittaker, and their supporters dispute the veracity of the facts as presented by Goodrich and Saunders, it is not for a reviewing court to pass judgment upon the truthfulness of the charges leveled against a public official. *See id.* The petitioners present facts with enough specificity and detail to support a finding of factual sufficiency. We hold that the recall petition is factually sufficient. We reverse the superior court's conclusion as to factual sufficiency on charges one, two, and four.

*Legal Sufficiency*

█ █ ¶15 A recall petition is legally sufficient if it "state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of

office." *Chandler*, 103 Wn.2d at 274. An appropriate exercise of discretion does not constitute grounds for recall. *Id.*

¶16 Although Goodrich and Saunders have amassed a factually sufficient petition, Judge Laurie correctly concluded that charges one, two, and four fail as a matter of legal sufficiency. The petitioners assert that the "crux" of the allegations in this case is that "Commissioner Ward, acting in complicity with Commissioner Whittaker, used his public office for personal benefit, i.e., to acquire additional PERS service credits." Appellant's Opening Br. at 21. But there is nothing improper about Ward seeking to receive PERS credit. A state audit determined that "[t]he District could not support the retirement service credits reported for its Chief Organization Officer." CP (Whittaker) at 84. The District then pledged to "[w]ork with [PERS] to determine any appropriate corrective action." *Id.* at 87. It is unclear whether Ward actually ever received the PERS credits at issue. And the ballot synopsis the petitioners urge does not actually suggest that Ward received credit for work he did not complete. CP at 474. The allegation simply is that Ward used his public office to acquire PERS service credits. Such conduct does not amount to misfeasance.

¶17 The specific charges dismissed by Judge Laurie fail to achieve legal sufficiency. Charge one alleges that Ward created the position of COO without a written job description, expected hours of work, and a competitive selection process. But petitioners point to no authority that suggests the creation of the COO position in this manner was not an appropriate exercise of discretion. *See Chandler*, 103 Wn.2d at 275. Charge two—that Ward improperly stayed on as COO for several months after the new chief was instated—fails as a matter of legal sufficiency for the same reason. Charge four alleges that Ward sought PERS credit for work performed before the COO position was officially created. As noted above, nothing suggests that seeking compensation for time worked constituted a substantial act that

affected, interrupted, or interfered with the performance of Ward's official duties, or that rendered his performance of a duty in an improper manner. *See* RCW 29A.56.110.

¶18 Even viewed in totality, as the petitioners urge this court to do, Appellant's Opening Br. at 17, the charges alleged here fail to rise to a level of self-dealing suggesting substantial misfeasance. Contrary to petitioners' suggestion, the scenario here is not analogous to the situation in *West*, 155 Wn.2d 659. There, the city of Spokane's mayor used the influence and power of his position to proposition young men for sexual encounters. While no single act by Mayor West in isolation may have been legally sufficient to support recall, when viewed in total, his conduct was clearly wrongful. *Id.* at 667 (concluding West's activities either affected the performance of his official duties or constituted the performance of his duties in an improper manner). In contrast, many of the activities here reflect nothing more than appropriate discretionary acts. Others were nothing more than Ward's reasonable attempts to avail himself of benefits to which he was lawfully entitled to seek.

¶19 As to charge three, however, Judge Laurie correctly concluded that there was a sufficient legal basis for allowing the charge to progress to the next stage of the recall process. Assuming the veracity of the charge (that Ward and Whittaker willfully violated the Open Public Meetings Act of 1971), such an action arguably constitutes a significant instance of rendering their duties in an improper manner.[3] Ward and Whittaker argue that "[p]etitioners simply stating in declarations that a motion to adopt a resolution did not occur at a public meeting,

---

[3] We are not persuaded that because there are remedies in statute for an Open Public Meetings Act of 1971 violation, such a violation cannot be a legally sufficient basis for a recall petition. *See* Resp'ts' Br. at 21. A criminal act has a remedy other than recall—prosecution—but we would not suggest a criminally liable elected official cannot be recalled because he is subject to prosecution. Whether there are remedies available for an Open Public Meetings Act of 1971 violation is not dispositive of whether the petition presented here makes a legally sufficient case for recall.

contrary to the adopted minutes, without more proof, is not 'substantial.' " Resp'ts' Br. at 29. This appears to confuse the factual sufficiency inquiry with the legal inquiry. Petitioners presented detailed declarations from several attendees of the February meeting attesting that the motion was neither discussed nor passed during the open meeting. And, assuming the truth of the accusations—that Ward and Whittaker knowingly falsified minutes—interested parties were deprived of the opportunity to comment on the proposal to enroll the District in PERS. Though it may be difficult to imagine what objection one might lodge against the enrollment, it was an improper use of their public role for Ward and Whittaker to work around the open public meetings requirement. Being a factually and legally sufficient charge, it is up to the voters of the District to decide whether this action justifies a recall.

¶20 As to charges one, two, and four, we agree with the superior court and hold that these are not legally sufficient to proceed to the next phase of the recall process. We further agree with the trial court, however, that charge three should proceed to signature gathering.

*Attorney Fees*

¶21 Pursuant to RAP 18.1, Ward and Whittaker request attorney fees under CR 11. Resp'ts' Br. at 44 (citing *In re Recall Charges Against Lundquist*, 172 Wn.2d 120, 136, 258 P.3d 9 (2011) (suggesting attorney fees might be warranted under CR 11 for intentionally frivolous recall petitions brought for the purposes of harassment)). While charges one, two, and four were appropriately dismissed by the trial court, nothing in the record or the briefing suggests that Goodrich and Saunders initiated this recall petition for illegitimate purposes. There is some suggestion that Goodrich and star witness Jean Morris have a personal vendetta against Ward, but no finding of fact was made on this point. The bulk of the charges leveled against Ward and

Whittaker may be legally insufficient, but they do not appear to be frivolous or baseless. Attorney fees are not appropriate here, and the request is denied.

## CONCLUSION

¶22 We affirm the superior court's dismissal of charges one, two, and four. We affirm the superior court's decision to allow charge three to proceed to the signature gathering phase. We deny the motion for attorney fees.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, WIGGINS, and GONZÁLEZ, JJ., concur.

After modification, further reconsideration denied October 18, 2012.