/FILE\
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 2 6 2017
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on October 26, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE THE MATTER OF RECALL CHARGES AGAINST CITY OF BLACK DIAMOND COUNCIL MEMBER PATRICIA PEPPER | NO. 94574-8 <br><br> EN BANC <br><br> Filed ___OCT 2 6 2017___ |

GORDON McCLOUD, J.—Robbin Taylor filed a statement of charges seeking recall of Black Diamond City council member Patricia Pepper. The superior court ruled that four of those charges were factually and legally sufficient to support a recall petition. Pepper appeals. We affirm the trial court's decision with regard to the first three charges, but reverse with regard to the fourth charge.

## FACTS

In November 2015, Pepper defeated opponent Ron Taylor (husband of Robbin Taylor) in an election for Black Diamond City Council in King County. Clerk's Papers (CP) at 273. Black Diamond is a non-charter-code city with a mayor-city council form of government. CP at 287-88. The current mayor is Carol Benson. CP at 140. There are five seats on the city council, held by Pepper, Erika Morgan, Brian Weber, Tamie Deady, and Janie Edelman. *Id.* Pepper "ran on a platform of

change consistent with two other council members and opposed the two other council members who campaigned for the 'status quo'." CP at 271.

Beginning in January 2016, a chasm developed with Mayor Benson and council members Deady and Edelman on one side, and a majority of the city council—Pepper, Morgan, and Weber—on the other. *See* CP at 128. Disputes occurred, primarily regarding proposed changes to the council rules of procedure set forth in Council Resolution 16-1069 (R-1069), which were supported by Pepper, Morgan, and Weber. *Id.* Pepper, Morgan, and Weber tended to vote as a block. CP at 271. Specific disputes included whether the mayor or the council had the authority to hire and fire the city attorney, CP at 103; whether the council was approving minutes for council meetings, CP at 18; who had the right to control city council meetings and agendas, CP at 16; whether the council had the ability to modify or breach city contracts entered into by former council members, CP at 19; and whether council members could miss meetings without consequences, among other issues, CP at 17. Several council conflicts revolved around "Master Development Review Team" (MDRT) contracts for two large development projects planned in Black Diamond that had been approved by Mayor Benson and former council members. CP at 14, 113-19.

The bulk of the conflicts arose as follows: Pepper, Morgan, and Weber voted to enact R-1069. CP at 51. R-1069 provided several amendments to the council

rules of procedure. CP at 52-81. Mayor Benson and council members Deady and Edelman opposed the changes to the rules. *See* CP at 51, 128. Under the advice of then city attorney Carol Morris, Mayor Benson refused to enforce R-1069. CP at 128.

After Pepper, Morgan, and Weber passed R-1069, they voted to fire attorney Morris. *See* CP at 128-29. Mayor Benson hired emergency interim city attorney Yvonne Ward. *See* CP at 129. Ward submitted two memoranda to the council, concluding that R-1069 violated the Black Diamond Municipal Code (BDMC) and the Open Public Meetings Act (OPMA), chapter 42.30 RCW. CP at 121-38. The council had also received advice from prior city attorney Morris and from the city's risk management pool that the resolution could create liability for the city if council members violated the OPMA. CP at 37, 45-47, 155-56. The concern centered on the provisions in R-1069 that mandated a minimum of three council members (a majority of the council) for each standing committee, rather than two. CP at 122-25. Pepper had also received legal advice from an outside law firm indicating that these committees could trigger OPMA requirements, given that a majority of the council would be attending those committee meetings. CP at 100.

Upon passing R-1069, Pepper and a majority of the council made decisions to alter contracts regarding the MDRT. CP at 236-37. Ultimately, the council's decision to enact R-1069 and revisit the MDRT contracts, among other actions, led

3

to a lawsuit: MDRT contractor CCD Black Diamond Partners LLC (Oakpointe) filed suit against the city and council members Pepper, Morgan, and Weber. CP at 158-89. The suit alleged violations of the OPMA, which has led to litigation and costs for the city; the case is ongoing. *Id.*; Verbatim Record of Proceedings (May 10, 2017) (VRP) at 57.

During this time, Pepper was a member of council standing committees. CP at 15-16. Allegations were made that Pepper, Morgan, and Weber held secret council and standing committee meetings conducting city business in violation of the OPMA. CP at 12-16.

PROCEDURAL HISTORY

On April 7, 2017, after approximately a year and a half of tensions, Robbin Taylor filed a statement of charges with the King County Elections Division, requesting Pepper's recall. CP at 7-22. On April 25, 2017, the King County prosecutor's office initiated this case pursuant to RCW 29A.56.130 and prepared the following ballot synopsis:

1. Pepper, as part of a council majority, violated the Washington State Open Public Meetings Act, chapter 42.30 RCW, by convening and conducting closed meetings without public notice and by entering into private agreements to prepare and approve legislation.

2. Pepper, as part of a council majority, hindered the city's ability to receive legal advice by hiring and firing city attorneys.

3. Pepper, as part of a council majority, refused to attend council meetings and failed to approve minutes and enact necessary legislation related to vacancies and comprehensive planning.

4. Pepper, as part of a council majority, failed to enact a 2017 budget in violation of state law and instead enacted a temporary budget containing illegal provisions, impairing the city's ability to provide essential services.

5. Pepper conspired with two other council members to change Master Development Review Team contracts resulting in threatened legal action against the city, forcing the city into arbitration.

CP at 1-5.

On May 10, 2017, a hearing was held in King County Superior Court to determine the legal and factual sufficiency of the recall charges and the adequacy of the ballot synopsis. CP at 372-73. Robbin Taylor was represented by counsel, Pepper proceeded pro se, and the prosecutor provided input regarding the ballot synopsis language. *Id.* The court found the second allegation and a portion of the third allegation (that Pepper "failed to enact necessary legislation related to vacancies or comprehensive planning") legally and factually insufficient. *Id.* But the court ruled the remainder of the allegations in the ballot synopsis were factually and legally sufficient. *Id.* Accordingly, the court modified the ballot synopsis language as follows:

1. Pepper, as part of a council majority, violated the Washington State Open Public Meetings Act, chapter 42.30 RCW, by convening and conducting closed meetings without public notice and by entering into private agreements to prepare and approve legislation.

2. Pepper, as part of a council majority, refused to attend council meetings and failed to approve minutes.

3. Pepper, as part of a council majority, failed to enact a 2017 budget in violation of state law and instead enacted a temporary budget containing illegal provisions, impairing the city's ability to provide essential services.

4. Pepper, as part of a council majority, improperly voted to change Master Development Review Team contracts resulting in threatened legal action against the city.

CP at 375.

Pepper filed a notice of appeal. CP at 384. Robbin Taylor does not challenge the trial court's findings of insufficiency, so only the four modified charges listed above are at issue.

ANALYSIS

I.    Standard of Review

Article I, section 33 of the Washington State Constitution provides citizens with a substantive right to recall an elected official.[1] A recall petition must be both

---

[1] Specifically:

Every elective public officer in the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or who has violated his oath of office, stating the matters complained of, signed by the percentages of the qualified electors thereof, hereinafter provided, the percentage required to be computed from the total number of votes cast for all candidates for his said office to which he was elected at the preceding election, is filed with the officer with whom a petition for

6

legally and factually sufficient. *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984). Additionally, "[t]he charge, taken as a whole . . . , must be specific enough to give the elected official meaningful notice of the particular conduct challenged and why it is grounds for recall." *In re Recall of Boldt*, 187 Wn.2d 542, 549, 386 P.3d 1104 (2017) (citing *In re Recall of West*, 155 Wn.2d 659, 667, 121 P.3d 1190 (2005) (citing *In re Recall of Lee*, 122 Wn.2d 613, 618, 859 P.2d 1244 (1993))). Notably, in recall cases, courts do not consider the truth of the charges, only the sufficiency. RCW 29A.56.140; *In re Recall of Lindquist*, 172 Wn.2d 120, 131-32, 258 P.3d 9 (2011); *West*, 155 Wn.2d at 662. As we have repeatedly stated, "It is the voters, not the courts, who will ultimately act as the fact finders." *West*, 155 Wn.2d at 662 (citing RCW 29A.56.140; *In re Recall of Kast*, 144 Wn.2d 807, 813, 31 P.3d 677 (2001)).

This court reviews the superior court decision in the recall action de novo, *In re Recall of Ward*, 175 Wn.2d 429, 435, 282 P.3d 1093 (2012) (citing *In re Recall of Telford*, 166 Wn.2d 148, 154, 206 P.3d 1248 (2009)), but will "affirm the trial court's factual conclusions so long as substantial evidence exists supporting the trial

---

nomination, or certificate for nomination, to such office must be filed under the laws of this state, and the same officer shall call a special election as provided by the general election laws of this state, and the result determined as therein provided.

WASH. CONST. art. I, § 33.

court's conclusions." *In re Recall of Harrison*, 144 Wn.2d 583, 587, 30 P.3d 474 (2001) (citing *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999)). Importantly, recall statutes are construed in favor of the voter, and mere technical violations will not block a petition. *West*, 155 Wn.2d at 663; *In re Recall of Washam*, 171 Wn.2d 503, 510, 257 P.3d 513 (2011). Voters should be left to "'draw reasonable inferences from the facts; the fact that conclusions have been drawn by the petitioner is not fatal to the sufficiency of the allegations.'" *Boldt*, 187 Wn.2d at 549 (quoting *West*, 155 Wn.2d at 665 (citing *Chandler*, 103 Wn.2d at 274)).

*A. Legal Sufficiency*

A recall petition is legally sufficient if it "'state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office'" and there is no legal justification for the challenged conduct.[2] *Id.* (alteration in original) (quoting *Chandler*, 103 Wn.2d at 274). The burden is on the petitioner to identify the "'standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'" *In re Recall of Bolt*, 177 Wn.2d 168, 181, 298

---

[2] RCW 29A.56.110(1) defines "'misfeasance'" and "'malfeasance'" as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." Additionally, "'misfeasance'" also means "performance of a duty in an improper manner," and "'malfeasance'" means "the commission of an unlawful act." RCW 29A.56.110(1)(a)-(b). "'Violation of the oath of office'" means "the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law." RCW 29A.56.110(2).

P.3d 710 (2013) (quoting *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001)).

### B. Factual Sufficiency

A recall petition must also be factually sufficient. A petition is factually sufficient when the charges, taken as a whole, "'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'" *Ward*, 175 Wn.2d at 435 (quoting *Chandler*, 103 Wn.2d at 274). "In this context, 'prima facie' means that, accepting the allegations as true, the charge on its face supports the conclusion that the official committed misfeasance, malfeasance, or a violation of the oath of office." *In re Recall of Wade*, 115 Wn.2d 544, 548, 799 P.2d 1179 (1990) (citing *Teaford v. Howard*, 104 Wn.2d 580, 586, 707 P.2d 1327 (1985)). Additionally, "[w]here commission of an unlawful act is alleged, the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act." *Boldt*, 187 Wn.2d at 549 (citing *Telford*, 166 Wn.2d at 158).

The individual making the charge must have knowledge of the alleged facts on which the stated grounds for recall are based, RCW 29A.56.110; however, this knowledge need not be firsthand, personal knowledge. *In re Recall of Reed*, 156 Wn.2d 53, 58, 124 P.3d 279 (2005) (citing *Ackerson*, 143 Wn.2d at 373; *Lee*, 122

Wn.2d at 617). But mere insinuations, speculation, or a belief that the charges are true, absent other evidence, is not enough. *Chandler*, 103 Wn.2d at 274; *Reed*, 156 Wn.2d at 58.

II.    <u>Charge 1</u>: The violation of the OPMA charge is legally and factually sufficient

Charge 1 states, "Pepper, as part of a council majority, violated the Washington State Open Public Meetings Act, chapter 42.30 RCW, by convening and conducting closed meetings without public notice and by entering into private agreements to prepare and approve legislation." CP at 375.

This charge centers on alleged OPMA violations. As discussed above, Pepper, as part of a majority of the council, voted to enact R-1069. That resolution contained several amendments to the council rules of procedure. CP at 51-81. Under the advice of then city attorney Morris, the mayor refused to enforce R-1069. Subsequently, the council majority, including Pepper, voted to fire Morris. *See* CP at 128-29. The mayor then hired emergency interim city attorney Yvonne Ward; Ward provided memoranda to the council, concluding that R-1069 violated both the BDMC and the OPMA. CP at 121-38. Morris and the city's risk management pool also advised the council that the resolution could trigger OPMA liability. CP at 37, 45-47, 155-56. Their advice focused on the R-1069 provisions mandating a minimum of three council members (a majority of the council) for each standing committee—instead

of the previous requirement of two. CP at 122-25. Pepper received similar legal advice from an outside law firm. CP at 84-86.

The superior court found this charge legally and factually sufficient based on (1) Ward's legal memoranda, (2) evidence that Pepper received legal advice regarding the potential illegality of the conduct, and (3) evidence of OPMA violations occurring after the legal advice was provided. VRP at 55-56.

Pepper, however, argues that

> [T]he record is devoid of any evidence: (1) that Ms. Pepper attended any non-public meeting at which a majority of Council members were present, and/or (2) that Ms. Pepper knew her actions were contrary to the OPMA, particularly where Ms. Pepper was acting in accordance with legal advice given to the City concerning compliance with the OPMA.

Br. of Appellant at 7.

We need not decide whether every single one of Robbin Taylor's factual allegations suffices. Instead, the question is whether the charge as a whole should go to the voters. And on this record, the answer is yes: key allegations supporting this charge sufficed. We therefore agree with the trial court, CP at 381-82, that this charge is legally and factually sufficient.

To be sure, Robbin Taylor relies largely on two legal memoranda (the Ward memoranda, exs. 13, 14), and the allegations presented in these memoranda are general, the e-mails are not provided, and a referenced 40-page document is absent from the record. CP at 121-38. And while the recall petitioner need not always have

11

personal, firsthand knowledge of facts alleged, there must be some basis for the petitioner's belief that the allegations are true. *See Lee*, 122 Wn.2d at 616-17.

In this case, however, these memoranda are not the only basis for the charge. Robbin Taylor also provides other evidence, such as exhibit 3. CP at 29-31. This is an e-mail that provides comments to proposed changes to the council rules of procedure and asks, "[A]re we all still confirmed with resolve to knock [Edelman] out of any chairmanship of any committee?" CP at 31 (formatting omitted). Robbin Taylor also cites exhibit 8 in support of this charge. CP at 88. Exhibit 8 is an undated document entitled "A Plan" that Pepper possessed during a council meeting. The "Plan" contains a detailed list of action items to be accomplished with tasks assigned to various people; it identifies Pepper, Morgan, and Weber by name; and it lists, among other things, the "plan" to "Substitute the Agenda (On Pat's PC) Action: Need agenda handouts." *Id.* (formatting omitted). Robbin Taylor argues that exhibit 8 discusses items that constitute "'action'" under the OPMA. Br. of Resp't at 16-18 (citing *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 558, 27 P.3d 1208 (2001)).

Construing the recall statute in favor of the voter and allowing the voters to draw reasonable inferences from all of these facts, we agree with the trial court that this OPMA-related charge 1 is factually sufficient.

Charge 1 is also legally sufficient. If Pepper did e-mail with both Morgan and Weber (a majority of the council), as Robbin Taylor alleges, and if they did discuss changes to council rules, as Robbin Taylor alleges, such conduct would likely constitute council "action" in violation of the OPMA. RCW 42.30.020(3) (defining "action" for OPMA purposes as including, but not limited to, "receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions").

It is certainly true that this court has held that "the passive receipt of e-mails and other one-way forms of communication does not, by itself, amount to participation in a meeting because such passive receipt of information does not demonstrate the necessary intent to meet." *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 444, 359 P.3d 753 (2015). And the only specific e-mail referenced in Ward's memoranda was sent by Morgan. But as discussed above, Robbin Taylor also presented numerous other facts from which voters could draw the inference that Pepper participated in OPMA violations.

Because Robbin Taylor specifically details alleged violations of the OPMA and provides evidence of legal advice indicating knowledge of potential OPMA violations, the trial court correctly ruled that charge 1 is legally sufficient.

13

III.   <u>Charge 2</u>: The refusal to attend council meetings and failure to approve meeting minutes charge is both legally and factually sufficient

Charge 2 states, "Pepper, as part of a council majority, refused to attend council meetings and failed to approve minutes." CP at 375.

*A. Refusal to attend council meetings*

This charge also contains several subparts and multiple allegations. Robbin Taylor argues in part that Pepper colluded with two other council members to prevent meetings and thereby violated her duty as a council member. Br. of Resp't at 21. Pepper generally responds that she reasonably believed that nothing in the law or council rules made her failure to attend council meetings illegal. Br. of Appellant at 35.

Pepper's response does not answer Robbin Taylor's allegation. Robbin Taylor's allegation did not depend on the notion that Pepper's failure to attend was itself criminal or illegal. Instead, Robbin Taylor alleges that Pepper's actions violated her duty as a council member. Robbin Taylor also alleges that Pepper violated her duty as a council member when she colluded with two other council members to prevent meetings from taking place. Pepper's assertion that she reasonably believed absences were legal does not answer this allegation and therefore does not negate the intent element of a recall petition.

It is undisputed that Robbin Taylor regularly attended council meetings and can therefore assert personal knowledge of Pepper's attendance or absenteeism. Br.

14

of Resp't at 20; CP at 274. In addition, Pepper never denied missing any of the meetings listed in Robbin Taylor's brief. Further, as noted above, Robbin Taylor is not arguing that absences justify recall, but rather that Pepper violated her duty as a council member by preventing meetings from taking place, and that this justifies recall. We agree with the trial court that this charge is factually sufficient.

This charge is also legally sufficient. RCW 29A.56.110, the recall statute, does not require an act to be unlawful in order to form a legally sufficient basis for recall. Instead, it says, "'[m]isfeasance' or 'malfeasance' in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty . . . [, and] 'misfeasance' in office [additionally] means the performance of a duty in an improper manner." RCW 29A.56.110(1)(a)-(b). This statute also permits a recall petition to be based on "'[v]iolation of the oath of office,'" meaning the "neglect or knowing failure . . . to perform faithfully a duty imposed by law." RCW 29A.56.110(2). Robbin Taylor alleges Pepper's actions are a "violation of the oath of office" because "[p]urposefully defeating quorums to obstruct the functioning of the City is a neglect to perform faithfully her duties as a member of the Black Diamond City Council." Br. of Resp't at 21. Based on a plain language reading of RCW 29A.56.110, we affirm the trial court's ruling that this charge is legally sufficient.

### B. *Failure to approve meeting minutes*

Other portions of this charge are also sufficient. For example, Robbin Taylor further alleged that Pepper, along with the majority of the council, failed to approve city council meeting minutes. Although the fact that no minutes have been approved for certain council meetings does not specifically point to Pepper, the audio recording of the October 6, 2016 council meeting—cited by both parties—supports this factual allegation.

This portion of the charge is also legally sufficient. RCW 42.32.030 states, "[M]inutes of all regular and special meetings except executive sessions of such boards, commissions, agencies or authorities shall be *promptly* recorded and such records shall be open to public inspection." (Emphasis added.) A series of relevant Washington laws and Black Diamond City Council Rules define additional responsibilities regarding minutes, including:

- RCW 35A.12.110: "A journal of all proceedings shall be kept, which shall be a public record."
- Black Diamond City Council Rules of Procedure 2.3: "Minutes. The City Clerk shall cause to be prepared action minutes of all of the Council meetings, which meetings shall contain an account of all official actions of the Council. . . . No changes shall be made to minutes except by motion approved by a majority of the Council at a properly noticed meeting." (CP at 57.)
- Black Diamond City Council Rules of Procedure 3.7: Approval of meeting minutes is a routine consent agenda item unless a council member moves to remove item from the consent agenda for separate discussion and action. (CP at 60.)

16

Further, meeting minutes, when drafted, must be approved unless separately taken up and acted on outside the consent agenda process and, as noted above, this process must occur "promptly." RCW 42.32.030. The allegation of deliberate delay in approving minutes, with no motion to amend per the statute, is legally sufficient.

Once again, we agree with the trial court that charge 2 is sufficient to go to the voters.

IV.     Charge 3: The failure to enact a budget charge is legally and factually sufficient

Charge 3 provides, "Pepper, as party of a council majority, failed to enact a 2017 budget in violation of state law and instead enacted a temporary budget containing illegal provisions, impairing the city's ability to provide essential services." CP at 375.

Robbin Taylor alleges that Pepper and other majority members introduced a substitute budget, without proper notice, at the December 22, 2016, council meeting. Br. of Resp't at 23. Additionally, Robbin Taylor contends that the substitute budget contained illegal provisions and that Pepper attempted to force its adoption. *Id.* at 24. Robbin Taylor cites exhibit 20, a draft of the Black Diamond City Special Council minutes for December 22, 2016, in support of this allegation. CP at 19, 191-200. Robbin Taylor's evidence shows that the council eventually passed a temporary, and later a final, budget—keeping all city services funded—but it did so

17

after the deadline provided in RCW 35A.33.070.[3] Robbin Taylor alleges that Pepper obstructed the normal budget process and therefore violated RCW 35A.33.075.[4] Robbin Taylor argues that even though the council ultimately passed a budget, Pepper's wrongful conduct in delaying that passage can still support a recall. Br. of

---

[3] RCW 35A.33.070 provides:

The council shall meet on the day fixed by RCW 35A.33.060 for the purpose of fixing the final budget of the city at the time and place designated in the notice thereof. Any taxpayer may appear and be heard for or against any part of the budget. The hearing may be continued from day to day but not later than the twenty-fifth day prior to the commencement of the city's fiscal year.

RCW 35A.33.060 (the statute referenced in .070) requires that a "preliminary budget" be made publicly available in advance of the meeting at which the council will "fix[] the final budget." It also provides that the council will hold this meeting "on or before the first Monday of the month next preceding the beginning of the ensuing fiscal year." RCW 35A.33.060.

[4] RCW 35A.33.075 states:

Following conclusion of the hearing, and prior to the beginning of the fiscal year, the legislative body shall make such adjustments and changes as it deems necessary or proper and after determining the allowance in each item, department, classification and fund, and shall by ordinance, adopt the budget in its final form and content. Appropriations shall be limited to the total estimated revenues contained therein including the amount to be raised by ad valorem taxes and the unencumbered fund balances estimated to be available at the close of the current fiscal year. Such ordinances may adopt the final budget by reference: PROVIDED, That the ordinance adopting such budget shall set forth in summary form the totals of estimated revenues and appropriations for each separate fund and the aggregate totals for all such funds combined.

A complete copy of the final budget as adopted shall be transmitted to the state auditor, and to the association of Washington cities.

Resp't at 23 (citing *In re Recall Charges Against Davis*, 164 Wn.2d 362, 369-70, 193 P.3d 98 (2008)).

The trial court stated that "[t]he evidence before the court is that Ms. Pepper and her colleagues did not in fact pass a final budget by the deadline [imposed in] RCW 35A.33.075." VRP at 64. That court recognized that there was a factual question about who bore responsibility for this failure—Pepper or the majority—but concluded that the constitution places that decision in the hands of the voters, not the court.

We agree with the trial court. As noted in *Davis*, 164 Wn.2d at 370, Pepper's argument that everything worked out in the end is not a defense.[5]

V.    Charge 4: The MDRT charge is insufficient

Charge 4 states, "Pepper, as party of a council majority, improperly voted to change Master Development Review Team contracts resulting in threatened legal action against the city." CP at 375.

The superior court ruled that this charge is sufficient. That court concluded that once a developer's permit rights have vested under law, the city council members cannot interfere with those rights merely because they do not think the

---

[5] In *Davis*, the subject of the recall petition allegedly entered into a private, unauthorized agreement to provide a severance package—the alleged unlawful conduct was not "'cured,'" but the severance package was later voted down in a public meeting. 164 Wn.2d at 369. Despite the later vote, charges were sufficient as they alleged that the subject's conduct had the "'potential effect of obligating the Port.'" *Id.*

19

permits should have been issued. VRP at 65-66. The superior court further held that Robbin Taylor had sufficient personal knowledge to support the charges. *Id.* at 66.

We agree with the superior court's legal conclusions about vested rights. However, we find the evidence presented to support this charge insufficient. Robbin Taylor fails to present the pertinent contract language that created the "vested permit rights" acknowledged by the trial court or even the contract itself. *Id.* at 65. Pepper, by contrast, provided a legal memorandum by attorney Jane Koler that approved the council majority's conduct regarding the MDRT. Br. of Appellant at 44, App. A-1. That legal memorandum cites to the Oakpointe contract's relevant provisions and concludes the contract does *not* give Oakpointe any final authority over the composition of the MDRT. *Id.* Without providing the contract that allegedly created the duty at issue in this charge, Robbin Taylor's fourth charge cannot be considered legally sufficient.

## CONCLUSION

We affirm in part and reverse in part. The first three charges of the Pepper recall ballot synopsis are factually and legally sufficient. Charge 4, however, is insufficient.[6]

---

[6] Pepper filed a motion to supplement the record in our court; we deny that motion. Pepper also moved for costs under RAP 14.2-14.3. Pepper, however, is not the substantially prevailing party; her motion for costs is therefore denied.

_George McCloud, J._

WE CONCUR:

_Fairhurst, C.J._

_Stephens, J._

_Johnson, J._

_Wiggins, J._

_Madsen, J._

_Gonzalez, J._

_Owens, J._

_Yu, J._