FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 29, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 29, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) | No. 102594-7 |
| | ) | |
| RICHARD A. WEYRICH, Skagit County | ) | |
| Prosecuting Attorney; SANDRA F. PERKINS, | ) | En Banc |
| Skagit County Auditor; and DONALD L. | ) | |
| McDERMOTT, Skagit County Sheriff. | ) | |
| | ) | Filed: August 29, 2024 |

MADSEN, J.—Cody Hart appeals from the Skagit County Superior Court order finding that the charges in his petition to recall Skagit County Prosecuting Attorney Richard A. Weyrich, Skagit County Auditor Sandra F. Perkins, and Skagit County Sheriff Donald L. McDermott to be legally and factually insufficient. In his recall petition, Hart primarily alleges, among other things, that all three of the respondents' offices have been vacated in accordance with RCW 42.12.010(6) due to their failure to file their official bonds with the Skagit County Clerk's Office before their new term began on January 1, 2023. We affirm.[1]

---

[1] In his reply brief, Hart challenges this court's jurisdiction to issue a judgment "on the recall of Public Officers whose office has been vacated." Resp. to Resp't Br. Appellant Challenge of Jurisdiction at 2-3. He asserts that any judgment would be void. However, as noted in Hart's

BACKGROUND

On October 16, 2023, appellant Cody Hart filed a petition to recall Skagit County Prosecuting Attorney Richard A. Weyrich, Skagit County Auditor Sandra F. Perkins, and Skagit County Sheriff Donald L. McDermott with the Skagit County auditor.  The petition was certified and transmitted by the Skagit County auditor two days later.  The Skagit County prosecuting attorney appointed Deputy Solicitor General Karl Smith as a special deputy prosecuting attorney for the limited purpose of preparing the ballot synopses.[2]  Smith then petitioned the Skagit County Superior Court pursuant to RCW 29A.56.130 for a determination of the sufficiency of the recall charges.

The ballot synopsis against Skagit County Prosecuting Attorney Richard A. Weyrich read:

> The charges that Richard Weyrich, as Skagit County Prosecuting Attorney, committed misfeasance, malfeasance, and/or violated his oath of office allege:
>
> 1.  In the February 2019 Special Election, Prosecutor Weyrich violated federal and state election laws relating to military and overseas voters, ballot boxes, provisional ballots, and the canvassing board oath and manual;
>
> 2.  In 2019, Prosecutor Weyrich violated the Open Public Meetings Act [of 1971, ch. 42.30 RCW,] by failing to provide notice of meetings or adequate information in meeting minutes;

---

notice of appeal to this court, RCW 29A.56.270 provides this court with revisory jurisdiction over the decisions of the superior courts.

[2] The prosecuting attorney is normally tasked with preparing the ballot synopsis; however, when recall of the prosecuting attorney is demanded, the attorney general prepares and files the ballot synopsis.  RCW 29A.56.130(1)(b).  For efficiency purposes and due to the nature of the charges against the prosecuting attorney, Smith was assigned as a special deputy prosecuting attorney to prepare the ballot synopses for Perkins and McDermott as well.

3. In September 2022, Prosecutor Weyrich violated state law by refusing to accept criminal complaints against Skagit County officials and referring a complainant to the Attorney General's Office;

4. In November 2022, Prosecutor Weyrich violated state law by failing to present reported election law violations to a jury;

5. In December 2022, Prosecutor Weyrich violated state law by taking the oath of office before posting the required bond;

6. In January 2023, Prosecutor Weyrich violated state law by performing official duties without depositing a valid official bond; and

7. In July 2023, Prosecutor Weyrich misappropriated public funds through his representation at county expense in litigation challenging his right to hold office.

Should Prosecutor Richard Weyrich be recalled from office based on these charges?

Clerk's Papers (CP) at 147.

The ballot synopsis against Skagit County Auditor Sandra Perkins read:

The charges that Sandra Perkins, as Skagit County Auditor, committed misfeasance, malfeasance, and/or violated her oath of office allege:

1. In the February 2019 Special Election, Auditor Perkins violated federal and state election laws relating to military and overseas voters, ballot boxes, provisional ballots, and the canvassing board oath and manual;

2. In 2019, Auditor Perkins violated the Open Public Meetings Act by failing to provide notice of meetings or adequate information in meeting minutes;

3. In 2021, Auditor Perkins violated federal and state law by directing employees to destroy video records of the 2020 General Election;

3

4. In September and November 2022, Auditor Perkins violated state law and regulations by allowing election workers to work outside of announced working hours, which obstructed election observers;

5. In December 2022, Auditor Perkins violated state law by taking the oath of office before posting the required bond;

6. In January 2023, Auditor Perkins violated state law by performing official duties without renewing her official bond; [and]

7. In July 2023, Auditor Perkins misappropriated public funds through her representation at county expense in litigation challenging her right to hold office.

Should Auditor Sandra Perkins be recalled from office based on these charges?

*Id*. at 149.

The ballot synopsis against Skagit County Sheriff Donald McDermott read:

The charges that Donald L. McDermott, as Skagit County Sheriff, committed misfeasance, malfeasance, and/or violated his oath of office allege:

1. In September 2022, Sheriff McDermott violated RCW 36.28.011 by refusing to accept criminal complaints against Skagit County officials;

2. In November 2022, Sheriff McDermott violated RCW 36.28.011 by failing to respond to a complaint that county officials were unlawfully excluding election observers from observing ballot tabulation, ballot procession, and canvassing;

3. In December 2022, Sheriff McDermott violated state law by taking the oath of office before posting the required bond;

4. In January 2023, Sheriff McDermott violated state law by performing official duties without depositing a valid official bond; and

5.  In July 2023, Sheriff McDermott was represented at county expense in litigation that challenged his right to hold office.  This representation is a misappropriation of public funds in violation of RCW 42.20.070.

Should Sheriff Donald McDermott be recalled from office based on these charges?

*Id*. at 151.  The trial court approved the ballot synopses, and after hearing oral argument, Judge William Steffener found the charges against all three respondents to be both legally and factually insufficient to support a recall.  The court further denied Hart's motion to amend the ballot synopses since it determined the issue was moot.  Hart then filed a notice of appeal to this court.[3]

## ANALYSIS

Our state constitution provides Washington voters with the right to petition to recall any elected official from office who has "committed some act or acts of malfeasance or misfeasance while in office, or who has violated his [or her] oath of office."  WASH. CONST. art. I, § 33.  RCW 29A.56.110 through .140 governs the recall process.

---

[3] Hart also appeals from an order denying his motions to disqualify Deputy Solicitor General Karl D. Smith as preparer of the ballot synopses.  Hart fails to provide a compelling argument as to why Smith should be disqualified.  Hart cites to various rules of professional conduct (RPC) and statutes in his motion but fails to identify how Smith has violated them.  He contends that Smith has an interest in the case, but the record does not support this.  An e-mail exchange between Smith in his capacity as deputy solicitor general at the Attorney General's Office and Hart is not a basis for disqualification.  The e-mail was an attempt by Hart to inform the Attorney General's Office of the alleged obstruction of the observation of the canvassing process in the 2022 primary election.  Smith simply informed Hart that he should contact the Office of the Secretary of State and local law enforcement.  Thus, disqualification is not warranted here.  Hart appears to also challenge Judge Steffener's authority to issue any orders in the case, arguing he did so without an oath of office on file in Skagit County.  However, this issue was not litigated below and we decline to review it.

A voter's right to recall is not unlimited. *In re Recall of Fortney*, 199 Wn.2d 109, 116, 503 P.3d 556 (2022). "An elected official can be recalled only for cause, meaning the petition must be factually and legally sufficient." *In re Recall of Inslee*, 194 Wn.2d 563, 567, 451 P.3d 305 (2019). Factual and legal sufficiency is determined by the superior court where the officer subject to recall resides. RCW 29A.56.130(2). This court reviews the sufficiency of a recall petition de novo. *In re Recall of Boldt*, 187 Wn.2d 542, 549, 386 P.3d 1104 (2017); *Teaford v. Howard*, 104 Wn.2d 580, 590, 707 P.2d 1327 (1985) (Goodloe, J., concurring in part, dissenting in part).

Factual sufficiency requires the petition to state in detail the acts complained of, and the petitioner must have knowledge of the alleged facts. RCW 29A.56.110; *In re Recall of Sandhaus*, 134 Wn.2d 662, 668, 953 P.2d 82 (1998). More than a simple belief that the charges are true is required; rather, the petitioner must have some form of knowledge of facts that establish a prima facie case of misfeasance, malfeasance, or violation of the oath of office. *In re Recall of Ackerson*, 143 Wn.2d 366, 371-72, 20 P.3d 930 (2001). The recall charge as a whole "'must be specific enough to give the elected official meaningful notice of the particular conduct challenged and why it is grounds for recall.'" *In re Recall of Pepper*, 189 Wn.2d 546, 553, 403 P.3d 839 (2017) (quoting *Boldt*, 187 Wn.2d at 549). If a petitioner alleges an official violated the law, the facts must show that the official intended to do so. *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 263, 961 P.2d 343 (1998) (petitioner must demonstrate that the official intended to act unlawfully).

Legal sufficiency requires that the charges state with specificity "substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984). RCW 29A.56.110 defines "malfeasance," "misfeasance," and "violation of the oath of office":

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

Appropriately exercising discretion granted to the elected official by law is not a basis for recall. *Chandler*, 103 Wn.2d at 274. For charges based on discretionary acts, the petitioner must show that the "official exercised discretion in a manifestly unreasonable manner." *In re Recall of Shipman*, 125 Wn.2d 683, 685, 886 P.2d 1127 (1995). Discretion is exercised in a manifestly unreasonable manner if it is exercised on untenable grounds or for untenable reasons. *Inslee*, 194 Wn.2d at 572. "If a legal justification exists for the challenged action, the charge is not sufficient." *In re Recall of Sawant*, 197 Wn.2d 420, 426, 483 P.3d 752 (2021). The petitioner carries the burden of identifying "'the standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'" *Inslee*, 194 Wn.2d at 568 (internal quotation marks omitted) (quoting *Pepper*, 189 Wn.2d at 554-55). The court "shall not consider the truth of the charges, but only their sufficiency." RCW 29A.56.140.

7

First, we begin our analysis of the common charges against all three officials.

1. Performing Official Duties without Depositing or Renewing Their Official Bonds before January 2023

This charge alleges that Weyrich, Perkins, and McDermott vacated their offices when they failed to file their official bonds with the Skagit County Clerk's Office before the start of their new term commencing on January 1, 2023. Hart argues that according to RCW 42.12.010(6), "[e]very elective office shall become vacant on the happening of . . . [h]is or her refusal or neglect to take his or her oath of office, or to give or renew his or her official bond, or to deposit such oath or bond within the time prescribed by law." Further, RCW 36.16.060 provides that "[e]very county officer, before entering upon the duties of his or her office, shall file his or her oath of office in the office of the county auditor and his or her official bond in the office of the county clerk." Hart contends that since Weyrich's, Perkins', and McDermott's official bonds were not filed with the county clerk's office until a month after they began performing official duties for the new term, they violated the law and vacated their offices.[4] The trial court found this charge to be legally and factually insufficient. We agree.

Here, each of the officials obtained their official bonds in December 2022, before the beginning of their new term.[5] However, the bond was simply not filed with the

---

[4] Hart raises issues regarding the November 2023 general election in his opening brief. Such issues are outside the scope of review of this recall petition. RAP 2.5(a) (an "appellate court may refuse to review any claim of error which was not raised in the trial court").

[5] Perkins obtained her official bond for the new term beginning January 1, 2023, on December 12, 2022. McDermott obtained his official bond on December 12, 2022. Weyrich obtained his official bond on December 27, 2022.

county clerk's office until February 2023.  Even if filed past the prescribed time by law, Hart would still need to show an intent to violate the law or a willful failure to secure a bond.  *Sandhaus*, 134 Wn.2d at 670.  The facts here do not show such an intent, especially where Weyrich, Perkins, and McDermott each submitted declarations stating that they had no intent to violate the law and that they believed county staff would timely file proof of their official bonds with the Skagit County Clerk's Office.

Furthermore, although the official bonds were not promptly filed with the county clerk, this does not result in a violation of the law warranting removal from office under RCW 42.12.010(6).  *State ex rel. Austin v. Superior Ct.*, 2 Wn.2d 46, 51, 97 P.2d 171 (1939) ("Statutes providing that an office shall become vacant if the officer elected thereto does not file his official bond or take his oath of office within the time prescribed, do not operate to vacate the office.").  RCW 36.16.020 provides that the "term of office of all county and precinct officers shall be four years *and until their successors are elected and qualified and assume office* in accordance with RCW 29A.60.280." (Emphasis added.)  Weyrich, Perkins, and McDermott were all incumbents.  Thus, even though the official bonds were deposited one month after the beginning of the new term, according to RCW 36.16.020, their term of office continues until their successors are "elected and qualified," even if that successor is oneself.  This means that an incumbent's prior bond is deemed sufficient until their new bond is in place.  *See State ex rel. Meredith v. Tallman*, 24 Wash. 426, 432, 64 P. 759 (1901) (holding that the failure of an incumbent to give a new bond for the time he held over before his successor was elected

and qualified did not terminate the incumbent's right to office since the old bond was sufficient.). Therefore, we hold that the charges against Weyrich, Perkins, and McDermott are legally and factually insufficient.

2. Taking the Oath of Office before Posting the Required Bond

Hart alleges in the charges against Weyrich, Perkins, and McDermott that they violated RCW 29A.60.280 by taking their oath of office before posting the required bond. According to RCW 29A.60.280(3), "the oath of office must be taken as the last step of qualification."

It appears that Hart confuses "posting" of a bond required by RCW 29A.04.133(2) and "furnishing" of a bond required by RCW 36.16.050, with "filing" of the bond required by RCW 36.16.060. Here, all three officials obtained a bond before taking their oath of office.[6] The fact that the bond was not filed until later is irrelevant since there was a valid bond in place. Even if it were relevant, Hart fails to show that any of the officials acted intentionally in having their bonds filed after the term commenced. Therefore, the charges against Weyrich, Perkins, and McDermott are legally and factually insufficient.

3. Misappropriation of Public Funds

In the charges, Hart alleges that Weyrich, Perkins, and McDermott violated RCW 42.20.070(1), which provides that "[e]very public officer, and every other person receiving money on behalf or for or on account of the people of the state or any

---

[6] On December 28, 2022, both Perkins and McDermott took their oath of office. On December 29, 2022, Weyrich took his oath of office.

department of the state government" who "[a]ppropriates to his or her own use . . . without authority of law, any money so received" is guilty of a class B felony. Hart argues that each official misappropriated public funds when they defended themselves against this recall petition at the county's expense.[7]

RCW 42.20.070 applies to public officers or employees who receive money on behalf or on account of the people of the state. On its face, the statute applies to money, not public resources. Regardless of whether public resources are addressed by that statute, RCW 4.96.041(3) provides that "[t]he necessary expenses of defending an elective officer of the local government entity in a judicial hearing to determine the sufficiency of a recall . . . shall be paid by the local governmental entity if the officer requests such defense and approval is granted by both the legislative authority of the local governmental entity and the attorney representing the local governmental entity." Skagit County Code 2.20.030(1) permits Skagit County to "provide legal services for the defense of any of its officers, employees or volunteers when a lawsuit against them arises out of an official act or omission if the requirements of this section are met." Here, there

---

[7] Hart appeals from the trial court's order denying his motion to disqualify Erik Pedersen as respondents' counsel in this case. Hart argues that Pedersen is providing unauthorized legal services since county resources should not be used to defend this recall action. He also argues that representing the officials here is a violation of RPC 1.7(b)(2), which provides that a lawyer may represent a client if the representation is not prohibited by law. He also cites to RPC 8.4, but he fails to state how Pedersen has violated the rule. Whether a conflict exists requiring withdrawal is a question of law. *State v. O'Neil*, 198 Wn. App. 537, 543, 393 P.3d 1238 (2017). However, the record is deficient of any facts establishing a conflict here. Furthermore, RCW 4.96.041(3) specifically allows for representation of public officials at county expense if the local governmental entity approves. Hart does not demonstrate that the officials acted in bad faith or that Skagit County Code 2.20.030 precludes representation since the officials are not being prosecuted for official or willful misconduct.

was a resolution signed by the county commissioners allowing for representation for the public officials at county expense. Thus, we find the charges to be legally and factually insufficient.

    4.   <u>Violation of Election Laws and the Open Public Meetings Act</u>

Both Weyrich and Perkins (not McDermott) are charged with violating federal and state election laws in the February 2019 special election relating to military and overseas voters, ballot boxes, provisional ballots, and the canvassing board oath and manual.

Hart contends that both Perkins and Weyrich, as canvassing board members, failed to develop canvassing board rules and violated state and federal laws based on a secretary of state (SOS) report about the February 2019 special election. Hart cites to various statutes and codes but fails to explain how either official specifically violated the law. *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990) (A petition must state with specificity "'substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" (quoting *Teaford*, 104 Wn.2d at 584)).

The SOS review provided general suggestions for improvement. These suggestions were not targeted at Perkins or Weyrich directly, nor did the review describe any specific violations of the law. In fact, Perkins was elected and began her term on January 1, 2019, a few weeks before the February 2019 special election. Thus, the SOS's report related to events, policies, and procedures that predated Perkins' time as auditor. Moreover, Weyrich had delegated his canvassing board duties to other deputies in 2017-2018. Further, even if elections violations did occur, Hart does not show that either

Weyrich or Perkins intended to commit unlawful acts. *Pearsall-Stipek*, 136 Wn.2d at 263.

Both Weyrich and Perkins are also charged with violating the Open Public Meetings Act by failing to provide notice of meetings or adequate meeting minutes in 2019. However, Hart fails to explain how either Perkins or Weyrich violated the Open Meetings Act. He does not cite to any specific dates or meetings that violated the act, nor does he identify any allegedly deficient meeting minutes. Hart does not describe the charges "with sufficient precision and detail to enable the electorate and the challenged official to make informed decisions in the recall process." *Jenkins v. Stables*, 110 Wn.2d 305, 307, 751 P.2d 1187 (1988). Thus, the charges against Perkins and Weyrich for election violations and violations of the Open Public Meetings Act are legally and factually insufficient.

Next, we address the remainder of the charges against each individual official.

5. <u>Remainder of the Charges against Weyrich</u>

In charge 3, the recall petition alleges that in September 2022, Weyrich violated state law by refusing to accept criminal complaints against Skagit County officials and referring a complainant to the Attorney General's Office. Charge 4 similarly alleges that in November 2022, Weyrich violated state law by failing to present reported election law violations to a jury.

RCW 36.27.020(9) provides that the prosecuting attorney shall "[p]resent all violations of the election laws which may come to the prosecuting attorney's knowledge

to the special consideration of the proper jury." However, prosecutors "generally have wide discretion in charging decisions." *Jewett v. Hawkins*, 123 Wn.2d 446, 449, 868 P.2d 146 (1994); *State v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984) ("Exercise of this discretion involves consideration of factors such as the public interest as well as the strength of the case which could be proven."). Criminal charges are referred to the Skagit County prosecutor by law enforcement officers. The Skagit County prosecutor does not accept referrals from citizens directly. The Skagit County Prosecuting Attorney's Office received no referral by a law enforcement agency related to the September or November 2022 elections violation claims. Even if it had, Weyrich had no duty to investigate and had the discretion to decide whether or not to prosecute. *In re Recall of Lindquist*, 172 Wn.2d 120, 134, 258 P.3d 9 (2011) (The prosecutor had no duty to investigate claims of misfeasance, malfeasance, or violation of the oath of office against the former county assessor-treasurer.). Hart fails to show that Weyrich exercised his discretion in a manifestly unreasonable manner. Thus, charges 3 and 4 are legally and factually insufficient.[8]

---

[8] Hart also asserts there were violations of RCW 42.20.040, RCW 29A.40.100 and WAC 434-261-020. RCW 42.20.040 makes it a misdemeanor for a public officer to knowingly make a false or misleading statement. Hart fails to provide evidence of false statements that have been made. RCW 29A.40.100 and WAC 434-261-020 provide for election observers, but the statute makes no provision for criminal charges for the improper exclusion of election observers. Thus, Hart does not establish a criminal violation of the law. Even if he had, the prosecutor's discretion to prosecute criminal violations prevents the charges from being legally sufficient.

6. <u>Remainder of the Charges against Perkins</u>

In charge 3, the recall petition alleges that in 2021, Perkins violated federal and state law by directing employees to destroy video records of the 2020 general election. He cites to two statutes: RCW 40.16.010, which criminalizes intentional destruction of items filed or deposited in a public office or with any public officer, and 52 U.S.C. § 20701.[9] Hart bases this allegation on an e-mail from Skagit County Information Services staff to Perkins, where he states, "Now that I had been asked to eliminate all other footage during this time frame, I am not able to selective[ly] create a package containing only a narrower time frame." CP at 66. Hart had requested video footage from November 4 and November 5. However, the e-mail does not show any indication of Perkins directing any records to be destroyed. In fact, the same e-mail states, "We have archived footage of the entire range [October 30] through [November 23] and some out to [November 24] for each camera." *Id.* This indicates that the footage Hart requested still exists. Thus, this is charge is legally and factually insufficient.

In charge 4, the recall petition alleges that in September and November 2022, Perkins violated state law and regulations by allowing election workers to work outside of announced working hours, which obstructed election observers. This charge is legally and factually insufficient.

---

[9] 52 U.S.C. § 20701 is inapplicable as it applies to "all records and papers which come into . . . possession relating to any application, registration, payment of poll tax, or other act requisite to voting." Surveillance footage does not fall under this.

Hart provides a transcript of an interview he conducted with the Skagit County elections manager for support. However, the transcript does not show that Perkins directed or knew about what time voting tabulation began or what time the Skagit County Administration Building doors were open or locked. Furthermore, Hart provides no evidence of interference with voting tabulation on specific dates.

Hart also cites to RCW 42.20.040, which criminalizes knowing, false, and misleading statements made by a public officer in an official report or statement. Yet, Hart fails to identify false or misleading statements made by Perkins in any official report. He additionally cites to RCW 29A.40.100 and WAC 434-261-020, which require the appointment of election observers, but fails to allege how these statutes were violated by Perkins. Even if Perkins did violate the law, Hart does not demonstrate any alleged violation was intentional. Therefore, this charge is insufficient.

7. Remainder of the Charges against McDermott

In charge 1, the recall petition alleges that in September 2022, McDermott violated RCW 36.28.011 by refusing to accept criminal complaints against Skagit County officials. Charge 2 similarly alleges that in November 2022, McDermott violated RCW 36.28.011 by failing to respond to a complaint that county officials were unlawfully excluding election observers from observing ballot tabulation, ballot procession, and canvassing.

RCW 36.28.011 provides that "it shall be the duty of all sheriffs to make complaint of all violations of the criminal law, which shall come to their knowledge."

Hart contends that he contacted Skagit 911 by phone to submit a criminal complaint to the Skagit County sheriff against Skagit County election officials and canvassing board members. He was informed that the sheriff would not go forward with a complaint against the Skagit County officials.

If a recall is based on the discretionary acts of an official, the petition must show that "the execution of that discretion" was done "'"in a manifestly unreasonable manner."'" *Inslee*, 194 Wn.2d at 572 (quoting *In re Recall of Bolt*, 177 Wn.2d 168, 174, 298 P.3d 710 (2013) (quoting *Shipman*, 125 Wn.2d at 685)). This means that the discretion must have been exercised on untenable grounds or for untenable reasons. *Id*. A charge is not sufficient if there is a legal justification for the challenged action. *Sawant*, 197 Wn.2d at 426. Law enforcement officers exercise significant discretion in deciding how, when, and against whom to enforce the law. *In re Recall of Snaza*, 197 Wn.2d 104, 113, 480 P.3d 404 (2021); *Donaldson v. City of Seattle*, 65 Wn. App. 661, 672, 831 P.2d 1098 (1992) ("Law enforcement must be vested with broad discretion to allocate limited resources among the competing demands."). When there is no mandatory duty to criminally enforce the law, officers have the discretion to decide how to enforce the law. *Id*. at 670.

McDermott, as the elected sheriff, has the discretion to set priorities as to which crimes to investigate. The sheriff's office lacks the resources to investigate and pursue all criminal conduct. McDermott states that he believed there was no basis for Hart's claims of election violations. Hart fails to show that McDermott's decision to not pursue

his criminal complaints was manifestly unreasonable. Rather, based on the limited resources and the lack of a basis for the complaints, McDermott ultimately decided not to investigate the complaints made.

Therefore, we conclude that charges 1 and 2 are legally and factually insufficient.[10]

---

[10] Hart also filed various motions with this court that we passed to the merits. We address them here.

1. Hart filed both an "Emergency Motion – Motion for Expedited Declaratory Judgement on the Public Offices of the Respondents Being Vacated" and a "Motion for Accelerated Review and Immediate Relief." In these motions, Hart requests that this court issue an emergency declaratory judgment, stating whether Weyrich's, Perkins', and McDermott's offices have been vacated. He argues that their offices were vacated pursuant to RCW 42.12.010 due to their failure to timely file their bonds with the Skagit County Clerk's Office as required by RCW 36.16.060. Since we decide the issue now, the motions are now moot. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012) ("As a general rule, we do not consider questions that are moot."). Therefore, we deny both motions.

2. Hart also filed an "Emergency Motion - Affidavit/Declaration of Cody Hart Concerning Election Improprieties and/or Omissions Pursuant to RCW 29A.68.013." However, in his filing he reports on alleged election improprieties occurring in the 2023 general election. The 2023 general election is not within the scope of review of this recall petition since none of the charges pertain to the 2023 general election. Thus, we deny this motion.

3. Hart additionally filed a "Motion for Recusal of Chief Justice Steven C. González." Hart alleges that Chief Justice González has been previously involved in this matter. "The test for determining whether a judge's impartiality might reasonably be questioned is an objective test." *State v. Gentry*, 183 Wn.2d 749, 762, 356 P.3d 714 (2015). For support, Hart provides two letters he sent to Chief Justice González on March 10, 2023 and on March 20, 2023, requesting assistance with alleged election violations. In response, Hart received a letter from the Supreme Court Clerk's Office, dated March 24, 2023, informing Hart that Chief Justice González received the letters, but that this court does not conduct investigations or intervene in or initiate cases. These letters alone do not lead a reasonable person to believe that there is any potential for bias. Therefore, the motion is denied.

4. Lastly, Hart filed an "Opposition to Court Record and Motion to Correct the Record." He asserts that the Supreme Court Clerk Office's December 20, 2023 letter to him was incorrect in stating that Hart's second petition for a writ of quo warranto appeared to be the same as the first petition for a writ of quo warranto that he filed. He also argues that his petitions for a writ of quo warranto do not show up in the case file. Regardless of whether the first and second petition for a writ of quo warranto are identical, a petition

CONCLUSION

We hold that none of the recall charges in Hart's petition are legally or factually sufficient. More than a simple belief that the charges are true is required. *Ackerson*, 143 Wn.2d at 371-72. Hart's petition fails to specify "substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274. Nor are the charges specific enough to provide the elected officials with meaningful notice of the alleged conduct warranting recall. Accordingly, we affirm the trial court.

_____
Madsen, J.

WE CONCUR:

_____ _____
González, C.J.      Gordon McCloud, J.

_____ _____
Johnson, J.       Yu, J.

_____ _____
Owens, J.       Montoya-Lewis, J.

_____ _____
Stephens, J.      Whitener, J.

---

for a writ of quo warranto is an original action that cannot be filed in an existing recall case. RAP 16.2. Further, his petitions for a writ of quo warranto were rejected, consequently, they do not appear in the court record. This motion is denied.

19